Brown et al. v. Connecticut Fire Ins. Co. of Hartford, Conn.

tion, but in the case at bar, no such exigencies existed. Defendant was not required to go to extremes and cut the bales in order to ascertain their condition, but had a right to rely on the warranty, await developments, and recoup its just damages at the suit of plaintiff. In *Rosenbaum Grain Co. v. Pond Creek Mill & Elev. Co.*, 22 Okla. 555, 98 Pac. 331, the rule is stated:

"Where wheat is sold under an executory contract, and the wheat delivered is inferior in quality to that contracted to be sold, the buyer may retain the inferior wheat delivered, and recover the damages he has sustained by reason of a breach of the seller's contract, without returning the wheat, or giving any notice to the seller."

Therefore, for reasons given, we recommend a reversal of the judgment, and that new trial be granted.

By the Court: It is so ordered.

---

BROWN *et al.* v. CONNECTICUT FIRE INS. CO. OF HARTFORD, CONN.

No. 5087.    Opinion Filed November 16, 1915.

(153 Pac. 173.)

1.    CONTRACTS—Recitals—Binding Effect.  In the absence of fraud or mistake, a party accepting a written contract without objection is bound by its recitals.

2.    INSURANCE—Policy—Ignorance of Contents.  The insured, in the absence of fraud or mistake, will not be heard to say that he was ignorant of the contents of the policy.

3.    EVIDENCE—Parol—Written Contract.  A contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence,

unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance.

4. **INSURANCE—Action on Policy—Pleading—Noncompliance with Condition—Excuse.** In an action on an insurance policy, a pleading which sets up that the assured failed to keep and perform the conditions in the policy because of ignorance of such conditions, but which fails to allege fraud, misrepresentations, or concealment, is insufficient to relieve the plaintiff from the effect of a violation of the plain and unmistakable terms of the policy.

5. **INSURANCE—Policy—Construction.** If language in an insurance policy is ambiguous, and susceptible of two constructions, one of which will give the policy effect, and the other render it void, that construction should be adopted which will make the policy effective.

6. **SAME—Forfeiture Clause—Construction—Excuse for Violation— Pleading.** The forfeiture clause in an insurance policy, wherein it is stipulated and agreed that, if the property named therein, or any part thereof, shall hereafter be or become mortgaged or incumbered, "this entire policy shall become null and void," is a promissory warranty, and renders said policy an indivisible contract, and, if said property, or any specific part or parcel thereof, designated in said policy as insured, is thereafter mortgaged or otherwise incumbered, the entire policy is void; and no recovery can be had for the loss or damage of said property, or any part thereof, whether included in the mortgage or not; and held, further, that in an action to recover for the loss or damage of the property, under such circumstances, an allegation in the plaintiff's petition, "That the making and existence of said mortgages on said land and barn in no way contributed to the loss herein complained of, and in no way incited, induced, or caused any person to set fire to said barn, or to set out fire that did get to said barn, but that said fire was incendiary, and not by any person in any way interested in said land, or in said barn, or the property therein," does not state facts sufficient to relieve the plaintiff from his acts in violating the terms of said contract, nor to entitle him to recover thereon.

7. **INSURANCE—Contract — Rights and Obligations—Determination.** Where parties have entered into a contract with such knowledge of its contents as the law imputes, that alone must be looked to as furnishing the measure of their rights and obligations, and courts will not undertake by construction to compel insurance companies to pay losses which they never assumed.

3. **APPEAL AND ERROR—Briefs—Citation of Cases.** Rule 8 of this court (38 Okla. vii, 137 Pac. ix) provides that: "In all proceedings in this court, in citing cases from the courts of this

394          SUPREME COURT OF OKLAHOMA.

Brown et al. v. Connecticut Fire Ins. Co. of Hartford, Conn.

state, counsel are required to cite the volume and page of the official state reports in which the case is reported. A failure to comply with this rule will render briefs subject to be stricken from the files." This is an important rule, adopted for the convenience of both court and counsel, and should be strictly followed. A failure to do so causes great inconvenience to the court and is extremely annoying. This suggestion is for the benefit of the entire bar.

(Syllabus by Robberts, C.)

*Error from Superior Court, Oklahoma County; John W. Hayson, Judge.*

Action by James L. Brown, as administrator of the estate of C. B. Bradley, deceased, and others, against the Connecticut Fire Insurance Company of Hartford, Conn.; a corporation. Judgment for defendant, and plaintiffs bring error. Affirmed.

*James L. Brown* and *Floyd Wheeler,* for plaintiffs in error.

*Scothorn, Caldwell & McRill,* for defendant in error.

Opinion by ROBBERTS, C. The parties herein will be designated plaintiffs and defendant, the same as below. The action is brought on a fire insurance policy, and comes from the superior court of Oklahoma county.

The pertinent allegations of the petition are, in substance, that one C. B. Bradley was the owner of a certain quarter section of land in Oklahoma county, and on the 15th day of December, 1908, he received from the defendant an insurance policy upon the following property: $350 on shingle roof, frame barn; $50 on wagons, buggies, carriages, harness, robes, saddles, and bridles on farm; $200 on grain, seeds, hay in stack on farm, not exceeding $50 on any one stack, and in buildings on farm; $50 on hay in stack on cultivated fields only on farm herein described,

not exceeding $50 on any one stack.   Hay on marsh land not insured.   Total, $635.

The premium on the policy was paid in full.   On the back of the policy is the following question and answer:

"Q.   Is the land incumbered, and, if so, what amount? A.   Yes; $200.00."

On July 11, 1909, the said C. B. Bradley died while residing on said land, and left surviving him, as his sole and only heirs, the following: Clara Bradley, his wife, Ardelia Bradley Nix, Daisy Bradley, and Ada Bradley, his children.

On December 21, 1910, the barn and other property insured in said policy was burned and entirely destroyed. On December 28, 1910, notice of said loss was duly given to the said defendant by the plaintiffs, and again on February 20, 1911, proof of loss was duly made and delivered to the defendant at Chicago, Ill., and a loss claimed on the barn of $500, and on one spring wagon burned in the barn, $40, and on one saddle burned, $4, on 100 bushels of cotton seed burned, $40, one set of harness, $6, all burned in said barn, and no part of said loss had been paid.   One of the conditions contained in said policy is as follows:

"This indemnity contract is based upon the representations made and contained in the application of even number herewith, and which the assured has signed and permitted to be submitted to the company, and which is made a warranty and a part hereof; and it is stipulated and agreed that, if any false statements are made in said application, *   *   .*   or if the property herein named or any part thereof shall hereafter be or become mortgaged or incumbered, or in case any change shall take place in the title or possession (except by succession by reason of the death of the insured) of the property herein named, or if the interest of the insured be other than unconditional,

unincumbered, and sole ownership, or if this policy shall be assigned, or if the risk be increased in any manner, except by the erection and use of ordinary outbuildings, then in each and every one of the above cases this entire policy shall be null and void, unless otherwise provided by agreement indorsed thereon.

"It is stipulated that no agent or employee of this company or any other person or persons than the manager of the Western Department at Chicago, Illinois, shall have power or authority to waive or alter any of the terms or conditions of this policy or to make indorsements hereon."

At the time of the execution of the said policy and application there was a mortgage on said land to one J. H. Everest for $200, as stated in the application.

Soon after the death of C. B. Bradley Jas. L. Brown was appointed administrator of his estate, and later upon the death of Clara Bradley, he was appointed administrator of her estate also, and the action stands revived in his name as such.

On October 16, 1909, which was after the death of C. B. Bradley, his wife and three daughters, without authority from probate court, and without any application or permission so to do, executed a mortgage upon the whole of said quarter section of land to one Harrison to secure the payment of the sum of $1,000, and the right to make this mortgage was not indorsed on said policy, and said mortgage was subsisting and unpaid at the time the barn and the other property contained in the barn was burned. The same parties placed other mortgages on the premises, but they were paid off before the loss. The making and existence of these mortgages in no way contributed to the loss herein complained of, and in no way incited, induced, or caused any person to set fire to said barn, but said fire was

incendiary, and not caused by any person in any way interested in said land or in said barn or the property therein.

The value of the land at the time the insurance was taken out, and during the whole of said time, was $5,000, and the risk and hazard of said insurance company was in no way increased by the making of said mortgage, nor was the security of said insurance company in any way decreased by the mortgages placed on said land and existing at the time the property was burned. Said property had been occupied at all times by these plaintiffs, other than Jas. L. Brown, until the 1st of March, 1910, and was then occupied by tenants until the day before the property was burned, when said tenants vacated said premises, and these plaintiffs had not yet moved back to the same, and the hazard was in no way increased by the occupancy of said tenants, and the occupancy of said tenants had wholly and entirely ceased before said barn and contents were burned. Said burning must have been incendiary and by some person or persons to these plaintiffs wholly unknown, but was not caused by any person having any interest in said premises, or in the recovery upon the policy herein sued upon. The policy is attached to plaintiffs' petition and made a part thereof.

The defendant denied all liability under said contract of insurance, and refused, and still refuses, to make any payments thereon, for which plaintiffs pray judgment for $500, with interest and costs.

To this petition the defendant filed a demurrer upon the two following grounds: (1) Petition fails to state facts sufficient to constitute a cause of action against defendant and in favor of plaintiffs, and fails to state facts sufficient in law to entitle plaintiffs to any relief whatso-

ever in the premises; (2) said petition shows upon its face that the contract sued upon was breached and violated, and thereby rendered null and void, prior to the date of the fire which caused the loss and damage for which plaintiffs seek to recover. This demurrer the court sustained, and rendered judgment against the plaintiffs, to which they excepted, and bring the case here on transcript.

It will be seen from the petition, which is a full and complete statement of the grounds on which the plaintiffs seek to recover, and these are all admitted by the demurrer to be true, that the only mortgage placed upon the property was on the real estate, and thereby two questions are presented for the determination of the court, viz.: (1) Does the fact of placing the mortgage upon the barn, of itself, defeat the plaintiffs' right of recovery upon the entire policy? (2) Does the placing of the mortgage on the real estate alone defeat the plaintiffs' right to recover for the loss of the personal property? Evidently an affirmative answer to the first will settle the second.

Before entering into consideration of what we consider to be the two vital questions involved, as above indicated, we deem it proper to mention other matters presented in the petition, but which do not appear to be seriously contended for in the plaintiffs' brief: (1) The allegation that C. B. Bradley and Clara Bradley, his wife, could not read and did not understand the details of the policy. The petition alleges that the policy was delivered to the assured, and, as we look at it, the law applicable to such cases is laid down in 9 Cyc. 260, as follows:

"A contract may be formed by accepting a paper containing terms. If an offer is made by delivering of a proposed contract, and the paper is accepted, the accepter

is bound by its terms; and this is true as a rule whether he reads the paper or not."

The rule adopted by this court is found in *Deming Investment Co. v. Shawnee Ins. Co.*, 16 Okla. 1, 83 Pac. 918, 4 L. R. A. (N. S.) 607, as follows:

"The insured, in the absence of fraud and mistake, will not be heard to say that he was ignorant of the contents of the policy."

In *U. S. Casualty Co. v. Mfg. Co.* (C. C.) 183 Fed. 238, it is said:

"An insured who accepts and retains a policy without objection, in the absence of fraud or misrepresentation, is bound by its terms, and cannot plead ignorance of them, nor avoid them because not in accordance with the application or the agreement made in the preliminary negotiations. * * * The principle that, in the absence of fraud, a party accepting a contract without objection is bound by all recitals, covenants, and conditions, is well established. That preliminary negotiations and arrangements, in order to secure the issuance of a policy, should be taken in subjection to the terms of the policy, as the same may be written, is the universal rule; and the contract in this instance must necessarily be determined by an examination of the policies themselves and the provisions thereof, which, from the very nature of things, necessarily control."

The Supreme Court of the territory, having under consideration a similar question in *L. L. & G. Ins. Co. v. Richardson Lumber Co.*, 11 Okla. 585, 69 Pac. 938, in the third paragraph of the syllabus says:

"A contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence,

unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance."

In *Morrison et al. v. Insurance Co.,* 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63, it is said:

"In an action on an insurance policy, a pleading which sets up that the party failed to perform the conditions in the policy because of ignorance of such conditions, but which fails to allege fraud, misrepresentation, or concealment, is insufficient as a defense."

(2) There is no merit in the allegation in plaintiffs' petition that:

"The agent did not discuss, nor call to the assured's attention, any of the terms of the policy, but simply took his application and went away with it, and thereafter the policy was received through the mail."

It appears that this policy became effective when countersigned in the city of Chicago, and was not issued by the local agent. Under such circumstances the present case comes within the rule laid down in the third paragraph of the syllabus in *Merchants' & Planters' Ins. Co. v. Marsh,* 34 Okla. 453, 125 Pac. 1100, wherein it is said:

"A local agent of an insurance company, whose only power is to solicit applications for insurance, and forward them to the company for approval, when, if approved, the company issues the policy and causes it to be delivered to the insured, has no power to waive any of the provisions of the policy so delivered, and notice to such agent of 'additional insurance' taken out by the insured after the delivery of the policy is not notice to the company."

We also call attention to the foregoing authorities because of their bearing upon the general terms of the policy contract, and the construction uniformly given to

the language, terms, and conditions of such contracts of insurance. It seems to be the settled rule that insurance contracts, or policies, as they are generally called, are construed the same as any other contracts, and that courts do not make such contracts for the parties, but simply construe them for the parties when called upon to do so, and that in so doing the courts look to the plain import of the language used. The determination of the meaning of the words of the contract is the polestar to which and by which the courts are guided; this, however, is subject to the general rule that, if the language of the policy is susceptible of two conclusions, that construction should be given to it which is most favorable to the assured. That rule is laid down in *Taylor v. Insurance Co. of North America,* 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906. See, also, *Capital Fire Ins. Co. v. Carroll,* 26 Okla. 286, 109 Pac. 535, wherein it is said:

"If language in an insurance policy is ambiguous and susceptible of two constructions, one of which will give the policy effect, the other render it void at the time of its execution, that construction should be adopted which will make the policy effective."

The next allegation of plaintiffs which, as before stated, is admitted by the demurrer, is:

"That the making and the existence of said mortgages on said land in no way contributed to the loss herein complained of, and in no way incited, induced, or caused any person to set fire to said barn or to set out fire that did get to said barn, but that said fire was incendiary, and not by any person in any way interested in said land or in said barn, or the property therein, in any way, in any manner, or in any form whatsoever."

And plaintiffs allege that they are entitled to recover, notwithstanding the admitted violation of the mortgage

clause contained in the contract. This contention brings us to what seems to be the real controlling questions in the case. Counsel for plaintiffs, in their brief, found their argument upon two propositions, in the order as follows:

(1) That the plaintiffs are entitled to recover for the value of the chattel property destroyed in the barn, and that the mortgaging of the land will not prevent recovery thereof.

(2) That they are also entitled to recover for the value of the barn destroyed, for the reason that it is conceded by the demurrer that, under the circumstances, the making of the mortgages referred to in no way contributed to the loss of the barn, nor increased the hazard of loss.

We will take these propositions up in inverse order to that in which they are stated by counsel, for the reason that it seems more in harmony with the course in which we have heretofore presented the case, viz.:

"That plaintiffs are entitled to recover for the barn destroyed, because the making of the mortgage in no way contributed to the loss of the barn, nor increased the hazard."

Bearing in mind the established rules for the construction of insurance policies, we now call attention to the particular language used in the policy involved, which is as follows:

"And it is stipulated and agreed * * * if the property herein named, or any part thereof, shall hereafter be or become mortgaged or incumbered, * * * this entire policy shall become null and void, unless otherwise provided by agreement indorsed thereon."

It is admitted by plaintiffs that this agreement was violated by them, in that they placed a $1,000 mortgage on the barn without the consent of the defendant indorsed on the policy. The language of the contract is plain and needs no construction. It is the simple agreement of the parties, made and entered into by them. As stated before, courts do not make contracts for parties, and it may well be added here that courts do not construe the language of contracts when the words used are so plain that they need no construction, as they are here.

The doctrine is concisely stated in *St. Paul Fire & Marine Ins. Co. v. Peck*, 40 Okla. 396, 139 Pac. 117, as follows:

"It is elementary, and the decisions uniformly hold, that, where a policy of insurance contains a provision 'that, if the title to the property be or become incumbered, the policy shall be void,' in that event, if at the time the policy is issued the property is incumbered, and the insured conceals that fact, or if subsequent to the issuance of the policy the insured incumbers the property without the consent of the company, he cannot recover."

The particular agreement of the assured not to mortgage the property under consideration here comes within that class of contracts known as promissory warranties; and, having under consideration such contracts, the Supreme Court of New York, in *Ripley v Ætna Ins. Co.*, 30 N. Y. 136, 86 Am. Dec. 362, say:

"The effect of the breach of the warranty is to annul the policy without regard to the materiality of the warranty, or whether the breach had anything to do in producing the loss. The effect is very well stated by Marshall, in his work on Insurance, 249. He says: 'A warranty being in the nature of a condition precedent, and therefore to be performed by the insured before he can

demand performance of the contract on the part of the insurer, it is quite immaterial for what purpose or with what view it is made, or whether the insured had any view at all in making it. But, being once inserted in the policy, it becomes a binding condition on the insured, and, unless he can show it has been literally performed, he can derive no benefit from the policy. The very meaning of a warranty is to preclude all question whether it has been substantially complied with or not. If it be affirmative, it must be literally true; if promissory, it must be strictly performed. * * * With respect to the compliance with warranties, there is no latitude; no equity. The only question is: Has the thing warranted taken place or not? If it has not, the insurer is not answerable for any loss, even though it did not happen in consequence of the breach of warranty."

Speaking upon the same subject, the Supreme Court of Massachusetts, in *Forbush et al. v. Insurance Co.,* 4 Gray, 337, say:

"A warranty in a policy of insurance is an express stipulation that something then exists, or has happened, or been done, or shall happen or be done; and this must be literally and strictly complied with by the assured, whether the truth of the fact or the happening of the event be or be not material to the risk, or be or be not connected with the cause of loss. It is a strict condition. Its effect is that the assured takes on himself the responsibility of the truth of the fact, or the happening or not of such contingency; and, unless the warranty be strictly complied with, the policy does not take effect. It is a condition precedent, and the assured is estopped from denying or asserting anything contrary to his express warranty."

Along these lines the Supreme Court of Delaware, in *Dover Glass Co. v. Am. Ins. Co.,* 1 Marv. 32, 29 Atl. 1039, 65 Am. St. Rep. 264, say:

"It is competent for the insurer to prescribe the terms and conditions upon which it will take the proposed risk, provided they are not illegal nor contrary to public policy. The acceptance of those conditions consequently imposes upon the insured the duty of a substantial compliance therewith, and any neglect thereof in any material respect, unless waived or condoned, will relieve the insurer from liability in case of loss,. whether it can be traced to such neglect or not. One reason for this is that he has, by agreeing to the terms upon which the insurance was made, shut the door against any inquiry as to the cause of the loss. Another and a more general reason is that, when a right and a duty springing from a contract are united in one of the parties thereto, he must show a performance of the one before he can assert the other. Are the conditions referred to illegal or contrary to public policy? They are neither. They are not forbidden by any legal precept, either written or unwritten. Certainly, clauses or conditions inserted in a contract, which induce caution as to the conduct of either party in respect to the subject-matter thereof, cannot be held as being repugnant to any of the rules and maxims relating to the broad subject of public policy, because anything that stimulates diligence and good faith between contracting parties is highly promotive of the general, as well as the individual, good. The tendency of such limitations upon the liabilities of insurance companies is to diminish the needless destruction of property, and obviate the necessity of increasing the rates of insurance to a point where they are intolerable, in order to cover the disbursements made to unworthy and dishonest persons."

Considering the effect and materiality of the "iron safe clause," which we deem to be a similar question, the Supreme Court of Arkansas, in *Assurance Co. v. Altheimer*, 58 Ark. 575, 25 S. W. 1069, says of a similar provision that the stipulations of the "iron safe" clause con-

stituted an express promissory warranty, in the nature of conditions precedent, and that a strict compliance with it was necessary. In his work on Fire Insurance, Mr. Wood also says that:

Such promissory warranties must be strictly performed, "and that, too, without reference to the question whether they were material to the risk. The insurer is permitted to judge for himself upon what conditions he will assume a risk, and what is material thereto, and, if he sees fit to insert immaterial conditions in the policy, the assured cannot defend against a breach thereof upon that ground. * * * The assured has no election, but must stand upon his performance of them."

As stated before, such agreements contained in a policy are promissory warranties. They are a part of the contract, and include the specifications under which the company agrees to carry the insurance, and, as stated by this court in *Deming Inv. Co. v. Shawnee Ins. Co., supra:*

"The parties had a right to make their own contract upon terms and conditions in this respect as they saw fit, and if the plaintiff chose to make his representations warranties, the question of the materiality becomes unimportant, for under such stipulation the defendant was relieved from showing, and the plaintiff was estopped from denying, that they were material to the contract, and we are not permitted to say that the defendant did not deem them material to the risk, or that it would have made the contract upon other terms than it did. The secretary of the insurance company testified that the matter of incumbrance was material, and, had the company had any knowledge of the incumbrance, it would not have issued the policy. And it may be that from experience he may be satisfied that the matter of incumbrance upon property sought to be insured is material to the risk, and, while this materiality he may not be able to

prove to the satisfaction of the court or jury, he has a right to refuse to insure property incumbered, and to insist that the statements of the applicant in his application as to such matters shall be a warranty by the insured to be true; and when, as in this case, so made, it was an agreement on the part of the plaintiff, not only to warrant the truth of such matters, * * * but that, if false, the contract shall be void, therefore all the statements and representations contained in the application must be treated as warranties, and must be true to authorize a recovery•upon the policy. *American Ins. Co. v. Gilbert, supra* [27 Mich. 429]; *Phoenix Life Ins. Co. v. Raddin,* 120 U. S. 183-189, 7 Sup. Ct. 500, 30 L. Ed. 644; *Northern Ins. Co. v. Grand View Building Ass'n, supra* [183 U. S. 308, 22 Sup. Ct. 133]."

Counsel call special attention to the case of *Eminent Household of Columbian Woodmen v. Prater,* 24 Okla. 214, 103 Pac. 558, 23 L. R. A. (N. S.) 917, 20 Ann. Cas. 287, 46 L. Ed. 213, which is, in part, as follows:

"The application specifically warrants the answers of applicant to the physician, and specifically agrees that such answers shall form the basis of the covenant, and the policy makes the application a part thereof. It is unnecessary for us to discuss whether the untrue answers to the questions of the worthy physician in controversy are material or immaterial; for the contract had made the applicant's answers her warranties. A statement warranted to be 'true and accurate,' if untrue, will prevent the policy from attaching as a contract of insurance, without regard to whether the statement is material or immaterial; and, where there has been a breach of a warranty, the policy is void, though the statement upon which the breach of a warranty is predicated is in no way material to the risk. Cooley's Brief on Insurance, p. 1950; *Hoover v. Royal Neighbors,* 65 Kan. 616, 70 Pac. 595; *Cobb v. Mut. Benefit Ass'n,* 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, 25 Am. St. Rep. 619; *Kelly v. Life Ins.*

*Clearing Co.,* 113 Ala. 453, 21 South. 361.   That which might have been immaterial has been made material; that which might have been unimportant has by stipulation of the parties been raised to importance.   It has not been left to the jury or to the court to determine whether the insured's answers to the physicians were material, and became the basis of the insurance company's contract, for the parties have settled this question by stipulation in the contract."

In *Owen v. U. S. Surety Co.,* 38 Okla. 123, 131 Pac. 1091, the same rule is laid down as follows:

"A misrepresentation renders a policy void on the ground of fraud, whilst noncompliance with a warranty operates as an express breach of the contract."

From the foregoing and many other cases, too numerous to mention, it seems to be the settled rule of this court, and all others, so far as we have been able to ascertain, unless otherwise provided by law, that a promissory warranty such as this contained in an insurance policy, is binding upon the parties thereto, and that a violation of the same annuls the policy, and that the provision in the policy here involved wherein "it is stipulated and agreed that, * * * if the property herein named, or any part thereof, shall hereafter be or become mortgaged or incumbered, * * * this entire policy shall be null and void," was violated by the giving of the mortgage on 'the barn, the effect of which was to and does defeat the plaintiffs' right to recover thereon.

We come now to the other proposition, wherein the plaintiffs contend that "the plaintiffs are entitled to recover for the value of the chattel property destroyed in the barn (which was not mortgaged)," and that the mortgaging of the land, including the barn, will not pre-

vent recovery therefor. We have carefully considered the authorities cited, as well as the able argument of counsel for plaintiffs in support thereof, and the writer hereof admits that it appeals to his personal feelings in the matter, but we are bound by the words of the contract as we find it, as well as the construction placed thereon by the courts. Nor are we unmindful of the fact that the case of *Miller v. Delaware Ins. Co.*, 14 Okla. 81, 75 Pac. 1121, 65 L. R. A. 173, 2 Ann. Cas. 17, at first thought, might seem to hold a different rule, but a careful reading of that case, and the language of that particular part of the contract involved here, will at once dispel the idea that the doctrine here laid down is in conflict with that case. In that case the court says:

"We think that the rule should be established here that where, by the policy, different classes of property are insured, and each class is separated from the others, and insured for a specific amount and there is a breach of the contract as to one class of the property insured, the contract should be considered not as one entire in itself, but as one which is severable, and in which the separate amounts specified may be distinguished, and a recovery had for one or more of them without regard to the other, provided the contract is not affected by any question of fraud, unlawful act condemned by public policy, or any increase of the risk to the company on the whole property insured, because of the breach."

Let us now compare what is termed the forfeiture clause of the two policies under consideration. In the Miller policy, having under consideration the iron-safe clause, it is provided:

"In the event of failure on the part of the assured to keep and produce such books and inventories for the inspection of said company, this entire policy shall be-

410     SUPREME COURT OF OKLAHOMA.

Brown et al. v. Connecticut Fire Ins. Co. of Hartford, Conn.

come null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The provision of the policy in the case at bar is as follows:

"And it is stipulated and agreed that, * * * if the property herein named, or any part thereof, shall hereafter be or become mortgaged or incumbered, * * * this entire policy shall be null and void, unless otherwise provided by agreement indorsed thereon."

The language "if the property [insured], or any part thereof, shall hereafter become mortgaged, this entire policy shall be null and void," is clear, positive, and distinct, and includes not only the entire property insured, but each and every part thereof. But one construction can be put upon this language, and that is, if any part or parcel of the property shall become mortgaged, the entire policy shall become void.

In the case of *Sullivan v. Mercantile Loan Mut. Ins. Co.*, 20 Okla. 460, 94 Pac. 676, 129 Am. St. Rep. 761, Justice Hayes, speaking for the court, clearly points out the difference in the language of the two classes of policies as follows:

"But the rules laid down in this case and the other cases *supra*, and the reasoning of the courts therein, can be of but little assistance to the court in the case at bar, for the reason that the clause used in the policy in the case at bar contains, in addition to the usual words contained in the policies in the cases *supra*, the following words: 'And each and every part thereof.' The language in those policies which, it is contended, renders them entire contracts, and indivisible in nearly every instance, reads, 'This entire policy shall become void,' whereas in the policy involved in this action the clause reads, "This entire policy and each and every part thereof

shall become void.'   Mr. Justice Harlan, in the case of *Royal Ins. Co. v. Martin,* 192 U. S. 165, 24 Sup. Ct. 247, 48 L. Ed. 385, in speaking of the rules governing the construction of any insurance policy, says: 'Of course, in every case the fundamental inquiry must be as to the intention of the parties, to be gathered from the words of the policy, always, however, interpreting the policy most favorably for the insured, where it is reasonably susceptible of two constructions.'   But the addition of the words 'and each and every part thereof' in this policy to the words 'this entire policy' renders the meaning of said phrase susceptible of but one construction.   When the meaning of the language of a policy or of any other contract is plain, clear, and unmistakable, no construction of such language is necessary; but the words used therein should be given the evident meaning with which they were used.   The unquestioned meaning and effect of the words 'each and every part thereof' in the policy in controversy is to render the policy an indivisible contract; and, if any part shall become void, then each and every part thereof shall be void."

The language used in the instant case is a specific, unmistakable provision that, if any separate part or article of the property insured shall be mortgaged, the entire policy shall become void.   It will be seen that the words here used are much stronger than the language used in the Sullivan case.   The words here used cannot possibly be construed to make this a divisible policy.   The writer hereof inclines to such a liberal construction of insurance contracts in favor of the assured as, if possible, to avoid a forfeiture; yet, where parties have deliberately entered into a contract, with such full knowledge of its contents as the law imputes, that alone must be looked to as furnishing the measure of their rights and obligations.   They must stand or fall by the plain meaning of the words employed.   Courts cannot and would not un-

dertake by construction to compel insurance companies to pay losses which they never assumed. The contention of plaintiffs that the parties did not have in contemplation the forfeiture of the policy upon the conditions named in the policy is fully answered by the statement that the law declares that they had in contemplation the clear, plain, and unmistakable meaning of the words used.

The further contention that the property belonged to the estate, and was not liable or subject to the mortgage referred to, is not tenable, for the reason that the mortgagors, being the heirs of the deceased owner of the property, as such, were competent to mortgage whatever interest they may have had in said property, be that great or small. After a full consideration of the entire case, we are forced to the conclusion that the trial court committed no error in sustaining the demurrer to the petition, and the case should be affirmed.

By the Court: It is so ordered.