## McCRACKEN, *Guardian,* v. TRAVELERS' INS. CO. OF HARTFORD, CONN.

No. 6365.    Opinion Filed March 21, 1916.

Rehearing Denied April 18, 1916.

(156 Pac. 640.)

1.    **INSURANCE—Contract—Issuance and Delivery of Policy—Proof.** The issuance and delivery of an insurance policy is not essential to establish liability upon an insurance contract, which may rest in parol, but, where no policy is issued or delivered, it is essential to show that a contract of insurance was entered into.

2.    **SAME—Application—Acceptance.** The making of an application for insurance, subject to the approval or rejection of the company to which it is made, is merely a step in the creation of a contract to insure. When the application is made out and forwarded to the company. it is not yet a contract of insurance; it has then only attained the position of a proposition on one side. It requires an acceptance by the other side before it can be said that the minds of the parties have met upon the terms of a contract to insure.

(Syllabus by Galbraith, C.)

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by M. E. McCracken, guardian, etc., against the Travelers' Insurance Company of Hartford, Conn. Judgment for defendant, and plaintiff brings error. Affirmed.

*Joseph D. Mitchell* and *H. P. White,* for plaintiff in error.

*Keaton, Wells & Johnston,* for defendant in error.

Opinion by GALBRAITH, C.  This was an action on a contract for accident insurance, where no policy was actually issued, although an application for one had been made and the premium therefor paid.  The application

and the premium were accepted, as the plaintiff in error claims, and the contract entered into. There were two counts in the petition, one alleged the making of the contract and a failure to issue and deliver the policy, whereby the plaintiff in error was damaged in the sum of the amount of the policy, and the second count alleged the making of a contract for the insurance and a failure to issue the policy, and asked that the defendant in error be required to issue the policy, and for judgment in the sum thereof and interest. At the close of the plaintiff's evidence, a demurrer was interposed, which was by the court sustained. From the judgment entered sustaining the demurrer, and against the plaintiff for costs, this appeal has been prosecuted.

The facts are that the defendant in error was a corporation engaged in the business of accident insurance, with its principal office at Hartford, Conn., a branch office at St. Louis, Mo., and a subagency at Tulsa, Okla. On May 13, 1908, Wm. K. McCracken, then a resident of Osage county, Okla., made application, in writing, through Jas. F. McCoy, the subagent at Tulsa, for an accident policy. The application was addressed to the Travelers' Insurance Company of Hartford, Conn., and recited in part:

"Application is hereby made for a policy to be based upon the following statement of fact."

Then follows the statement of the name, age, and residence, and the usual information required in such cases. As to the kind of policy, it was provided:

"Accident; form letter D. & D. M. principal sum $5,000.00; weekly indemnity, accident, health, $10.00, class medium; premium, $15.00; insurance against accidental

bodily injuries to be written for a term of six months from May 13, 1908."

The application closed:

"I personally solicited and recommended this risk..

"J. F. McCoy,
"*Broker, Solicitor, Agent of Subagent.*"

On signing the application, McCoy issued the following receipt:

"St. Louis, May 13, 1908.

"Nelagony, Okla.

"Received of William K. McCracken, fifteen & no/100 dollars, being the semiannual premium on policy No. ——, $5,000.00, D. & D. M. form issued by Travelers' Insurance Company of Hartford, Connecticut.

"$15.00.        James F. McCoy, *Cashier.*"

After receiving the application and the premium, as specified in the receipt, McCoy forwarded the application to the St. Louis office, with recommendation for its approval, and the issuance of the policy. The St. Louis office wrote McCoy under date of May 15th, saying:

"We are glad to hear from you today, but find that it will be necessary to submit to the home office the application for Wm. K. McCracken. We will have advice on this in the course of three or four days."

On May 16th, the St. Louis office wrote the Hartford,. Conn.; office:

"I am enclosing application for Wm. K. McCracken, for your approval on account of occupation. I am a little uncertain as to whether we issue our death and dismemberment policies at the medium classification. Won't you kindly pass on this at your earliest possible convenience."

The Hartford office refused to accept the application, and refused to issue the policy applied for, but in lieu thereof issued another form of policy for $2,000, and this policy was forwarded to the St. Louis office, and by that office forwarded to McCoy at Tulsa, in letter of May 29th. McCoy, on receiving this policy for $2,000, mailed it to McCracken in a letter without explanation. Under date of June 2d, McCracken wrote McCoy, calling his attention to the fact that he had received the policy for $2,000, but that it was not the policy he had applied for, and not the one he wished, and asked:

"Would be pleased to have you correct the matter if you can, otherwise please explain as you will remember you sent no explanation at all."

On June 8th, McCoy acknowledged receipt of this letter, and wrote:

"If you will return this policy to me I will make the proper changes if possible."

On June 19th, McCracken returned the $2,000 policy to McCoy, with a letter stating:

"Please find enclosed policy which I desire to have exchanged for accident policy without sick benefits for $5,000.00, as explained in former letter."

On June 19th, McCoy wrote the St. Louis agent:

"I am herewith returning policy No. R-1529860, issued in favor of William McCracken. His class is medium instead of hazardous as you have classed him in writing this policy, and I have so stated in the application, premium for same being $15.00, the same to be issued without sick benefits."

On July 7th, McCracken wrote McCoy:

"You will probably remember I sent you back the policy. I received from Travelers' Insurance Co., to have it changed about the 18th of June. I have not heard a word either from you or the company about the matter since. Please send me the policy if possible without further delay."

McCoy, under date of August 8th, wrote the St. Louis office, calling attention to the fact that on June 19th he had returned the $2,000 policy, and "asked that you make certain changes in the policy and return same to this office," and further advising that he had not been informed as to what action had been taken on that request, and asked that the policy be changed, as requested in the letter of June 19th, "and let the same come forward to us by return mail." On August 13th, McCracken met his death by accidental drowning. The $2,000 policy was not changed, but was canceled upon its receipt at the St. Louis office, and the $5,000 policy was not issued, and in fact no other policy was issued upon the application. After the death of McCracken notice was sent to the company, and it denied liability, and it developed that McCoy had retained the premium, but under instructions from the St. Louis and Hartford offices he was directed to return the premium, which he attempted to do by sending draft by registered letter, but this was refused and returned to him, and this action was commenced to recover on the contract.

Although it is alleged in the petition that McCoy was authorized to enter into contracts for and in behalf of the Travelers' Insurance Company, the evidence introduced by the plaintiff clearly showed that he had no such authority; that the limit of his authority was "to solicit applications, collect premiums, and forward the same to the company"

for acceptance or rejection. This cause was not presented to the trial court upon the theory that the company was estopped by its conduct, and that of its agents from denying the making of the contract of insurance, and for that reason that question is not raised on this appeal. The cause was presented to the trial court upon the theory that the contract of insurance had been entered into between McCracken and the company. In order to fix liability upon the company in this instance, it was necessary that the evidence should show that a contract was made, that there was a "meeting of the minds" of the parties; that is, that McCracken applied for a certain kind of policy for a definite term for a specified premium, and that the company accepted this application, i. e., agreed to issue the policy applied for. It is made to appear that such an application was made, but it does not appear that the company accepted this application, or that there was a meeting of the minds, and that a contract of insurance was made. The issuance of the policy was not necessary to the making of the contract. It is admitted that the contract of insurance may rest in parol. This court said, in *Van Arsdale-Osborne Brokerage Co. v. Cooper*, 28 Okla. 602, 115 Pac. 781:

"The correct rule under such an application seems to be that the obligation of the insurer or insurance company depends on the fact of the acceptance or approval of the application for insurance, and not on notice of such acceptance to the insured."

And further in the opinion, quoting from the case of *Herring v. American Ins. Co.*, 123 Iowa, 533, 99 N. W. 130, said:

"Where a proposal for insurance, as contained in an application, is accepted, there is a contract of insurance, though no policy has issued."

And, again, quoting from the case of *New York Life Ins. Co. v. Babcock*, 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134, said:

"Where one party makes a proposition to purchase a thing which is unconditionally accepted by the other, the contract of purchase becomes complete. There is no reason why the same rule should not be applied when a written application is made for an insurance policy. So long as the application is not acted upon by the insurance company, of course no contract has been consummated; and, if the applicant should die before the acceptance of his application, the company has incurred no liability. But when the application is accepted and nothing remains for the applicant to do, the contract becomes complete."

In *Shawnee Mut. Fire Ins. Co. v. McClure*, 39 Okla. 535, 135 Pac. 1150, 49 L. R. A. (N. S.) 1054, the second paragraph of the syllabus reads:

"The making of an application for insurance, subject to the approval or rejection of the company to which it is made, is merely a step in the creation of a contract to insure. When the application is made out and forwarded to the company, it is not yet a contract of insurance; it has then only attained the position of a proposition on one side. It requires an acceptance by the other side before it can be said that the minds of the parties have met upon the terms of a contract to insure."

And the third paragraph of the syllabus reads:

"To constitute a binding 'contract of insurance,' there must be a meeting of the minds of the parties, with authority to contract as to the premises and the risk, the amount insured, the term the insurance is to continue, and the amount of the premium."

See, also, *Dorman v. Conn. Fire Ins. Co.,* 41 Okla. 509, 139 Pac. 262, 51 L. R. A. (N. S.) 873.

The plaintiff's evidence clearly shows that there was no meeting of the minds of the parties for this alleged. insurance. It appears that the company, in response to the application for the $5,000 death policy, issued a $2,000 death and benefit policy, and that this policy, when delivered to the insured, was unsatisfactory, and was not accepted, and that he returned it to the company, with the request that the policy originally applied for be issued to him. The company refused to issue the policy applied for, and canceled the $2,000 policy. Therefore it clearly appears from the evidence that no contract of insurance was entered into in this instance.

The case of *Insurance Co. v. Stone,* 61 Kan. 48, 58 Pac. 986, relied upon by the plaintiff in error, is not an authority for his contention in this case, for the court says in that case, during the course of its opinion:

"The evidence in this case leaves no room to doubt but that the secretary did not reject the application of the defendant in error, but, on the contrary, accepted it."

While no policy was delivered in that case, the application for the policy was accepted, and the policy was actually issued, and there was a meeting of the minds of the parties as to the contract entered into. So all of the cases that sustain an action on a parol contract where no written policy has been delivered hold that the making of a contract is necessary to fix liability on the company. It was not a question for the jury in this case, as contended by the plaintiff in error, to determine whether or not a contract of insurance was entered into between McCracken and the company, since the evidence offered on behalf of

the plaintiff showed conclusively that no contract was entered into, and would not have supported a finding to the contrary.

We, therefore, are constrained to hold that the trial court was right in sustaining the demurrer to the evidence, and recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.