## MISSOURI STATE LIFE INS. CO. v. BROWN.

No. 19587. Opinion Filed April 28, 1931.

Rehearing Denied June 30, 1931.

Keaton, Wells, Johnston & Barnes, Jourdan & English, and A. H. Japp, for plaintiff in error.

Robert E. Maloney and West, Gibson, Sherman, Davidson & Hull, for defendant in error.

KORNEGAY, J. This case comes here on proceeding in error from the district court of Cotton county; Honorable E. L. Richardson, trial judge. This is the second time the case has been here. The first time it came up on proceeding in error by the present defendant in error against the present plaintiff in error from a judgment on a jury's verdict; Honorable A. S. Wells, judge. It is reported in 124 Okla. 155, 254 Pac. 7. On the first trial, a divided verdict was returned in favor of the life insurance company. The ground of reversal was the error of the court below in admitting a portion of the correspondence of the life insurance company with its general agents at Oklahoma City, requesting that they cause their agent to "arrange for a meeting between the applicant and examiner, in order that the information des'red by us may be furnished." and another letter following, stating that "the application is still in our pending file awaiting additional information requested from Mr. Jones."

The case went back, and the pleadings were amended and additional evidence offered tending to show the admissibility of the correspondence. This time the verdict was for plaintiff.

Plaintiff below is a resident of St. Louis, Mo. Defendant below is a life insurance company of St. Louis, Mo. Plaintiff in 1923, was engaged in buying and developing some oil leases in Oklahoma. He was engaged in that business with a man by the name of H. J. Brown and Joseph F. Drake, a drilling contractor. The business is described in plaintiff's petition as a joint adventure. H. J. Brown was president of a bank at Walters. An account was carried by Drake in said bank. Plaintiff Brown, from time to time, honored drafts drawn by Drake and by H. J. Brown, which went to Drake's account in said bank. Plaintiff Brown claimed to have advanced $90,000 for the business in the early part of August, 1923. Sometime after July 4th, plaintiff requested Drake to take out insurance on his life in favor of plaintiff, he to have the policy and to pay the premium, as testified to by plaintiff:

"I was to have the policy to be made out to me, and I was to have the policy."

An application for life insurance in the amount of $100,000, payable to plaintiff, as being a business partner of Drake, was made by Drake on August 8, 1923, the application being taken by H. J. Brown, one of the parties interested in a joint adventure with plaintiff and Drake. A company receipt was given by the local agent to Drake, and after his death was found in his effects and delivered to plaintiff. A check on the bank, of which Brown was president, was signed by Drake, but never cashed, drawer sometimes having funds to meet it, sometimes not.

A medical examination was had by a local doctor in due time, and forwarded to the home office at St. Louis, Mo. Owing to the size of the policy, and the necessity of reinsuring the risk, an examination by another local examiner was requested. This was had in due time. The specific gravity of the urine in both local examinations was given as 1.020. The specific gravity of the specimen secured at the last examination, and which was sent to the home office, was found to be 1.035, and showed a suspicious reaction in color and sediment indicating diabetes. A "glucose test" was promptly called for by notice to the examiner. Later the matter was called to the attention of local agent and general agents. The company evidently was trying to get the business. The risk was notified time and again to come in and submit to further examination. He did not do so, on one occasion refusing to talk to his associate, the local solicitor, to whom he had applied for the insurance.

Finally, on October 15th, owing to checks having piled up in the bank with nothing to pay them, the president, Brown, got in an automobile and drove to where Drake was, and induced him to come back and submit to the "glucose test," which consisted of a meal having considerable sugar in it, and getting urine voided from 2 to 4 hours thereafter. The sample was sent in, and analyzed at the home office, and it was found that the urine test was satisfactory, and directions were given to issue the policy and to mail it out for delivery.

The half holiday of Saturday, and Sunday, intervening, the issuing and delivery of the policy was thereby delayed. Drake went to Texas, and had an automobile accident, resulting in death, before the policy was completed. Hence, there was no insurance.

Then followed the action for negligence, instituted by Brown, with a recovery for the full amount of insurance asked for in the application. The company evidently wanted the business and was doing all in its power to get the matter closed. The risk evidently was indifferent, thinking more of his drilling than of perfecting the policy. The expectant beneficiary contented himself with silence, so far as the company was concerned, till the risk died.

The evidence of negligence is not sufficient. The cause should be reversed, and in view of two trials and the strong improbability of other evidence favoring plaintiff below, the lower court is directed to enter judgment for the defendant below.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., dissents. ANDREWS, J., absent.