**INOLA MACHINE & FABRICATING COMPANY, Plaintiff–Appellant,**

v.

**FARMERS NEW WORLD LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 78–1498.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 22, 1980.

Decided Oct. 14, 1980.

Joseph A. Sharp, Tulsa, Okl. (Joseph M. Best also of Best, Sharp, Thomas & Glass, Tulsa, Okl.), for plaintiff–appellant.

Richard D. Wagner, Tulsa, Okl., for defendant–appellee.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

Inola Machine & Fabricating Company (Inola), named beneficiary in an application for life insurance on one of its officers, appeals from a decision of the district court ruling that no contract of insurance was in effect at the time of the officer's death and no liability was created against Farmers New World Life Insurance Company on the basis of waiver or estoppel. Federal court jurisdiction is based upon diversity of citizenship.

The case was presented upon stipulated facts. On March 8, 1976, the deceased made an application for life insurance, naming a bank lender to Inola as primary beneficiary and Inola as subordinate beneficiary and owner of the policy. A prerequisite to the issuance of the policy was a medical examination of the applicant. Applicant knew of this requirement, was reminded of it on March 8 by the insurance agent, and was called several times thereafter concerning the necessity of the examination. Nevertheless, applicant procrastinated and died accidentally on April 29, 1976, before undergoing the medical examination he had scheduled for May 3, 1976.

At the time of the original application, Inola made an advance payment of two months' premiums under what is termed a "Conditional Receipt," also agreeing that future premiums would automatically be deducted from its bank account by Prematic Service Corporation, a sister corporation of the insurer, and forwarded by Prematic to the insurer.

Because the medical examination was never performed, the insurer did not approve of the policy during the life of the applicant. But Prematic proved diligent in its collection efforts. On May 1, 1976, Prematic sent Inola a monthly payment request; it cashed and forwarded to the insurer Inola's check sent on May 10. On

May 24, the insurer was given notice of the death of the applicant. Subsequently, Prematic made automatic drafts upon the account of Inola on June 1 and July 1 for premiums due on the policy. On July 2, 1976 the insurer advised applicant's widow that no decision on the approval or denial of the policy had yet been made. Eight days later, it advised the primary beneficiary the policy had not been accepted and no coverage would be acknowledged.

On August 1, 1976, Prematic credited Inola's account with the return of one month's premium. The parties stipulated that the failure to return the rest of the premiums was the result of clerical error, and a refund was tendered shortly after the institution of this lawsuit.

Oklahoma law controls this diversity case.

Inola's first contention is that applicant and the insured mutually assented to make a contract for life insurance; that the collection of premiums by the insurer signifies acceptance of the contract. It argues that applicant's failure to undergo a medical examination is immaterial since applicant was in good health and died an accidental death. We agree with the trial court's conclusion that no contract was ever made by the parties.

■ It is well established under Oklahoma law that an "application for insurance is not itself a contract, but is a mere proposal, which requires acceptance by the insurer through someone actually or apparently authorized to accept the same to give it effect as a contract." *Hartford Fire Ins. Co. v. Wade*, 208 Okl. 573, 257 P.2d 1064, 1067 (1953), quoting *Shawnee Mut. Fire Ins. Co. v. McClure*, 39 Okl. 535, 135 P. 1150 (1913). In determining whether the terms embodied in the application and conditional receipt forms create a contract, we must follow the principle that an "insurance policy must be construed to give effect to all its provisions, where possible, and that its terms and provisions are to be accepted in their usual and ordinary sense," and only in cases of ambiguity are the terms to be strictly interpreted against the insurer. *Great Northern Life Ins. Co. v. Cole*, 207 Okl. 171, 248 P.2d 608 (1952).

The application for insurance in this case provides:

> Except as provided in the Conditional Receipt, . . . the insurance applied for shall not become effective until a policy is delivered and full payment of the initial premium required has been made to the Company . . . .

> .    .    .    .    .

> No agent or medical examiner is authorized to accept risks, pass on insurability, make or modify any contract or waive any of the Company's requirements.

The conditional receipt provides in large block letters that "No insurance is provided under the terms of the receipt unless all of its conditions have been satisfied." The first two conditions listed below this disclaimer are that the application must have been approved by the home office of the company and that all medical examinations required by the company have been completed. The receipt also provides that in case the policy is declined premiums paid before the determination to approve or decline issuance of the policy will be refunded.

■ The insurer could not have more clearly outlined as conditions precedent to the making of an insurance contract that the applicant undergo all required medical examinations and that the company approve of the application. Applicant knew of the medical examination requirement, and under Oklahoma law, applicant is charged with knowledge of the terms and legal effect of unambiguous provisions in the application form. *See Brown v. Connecticut Fire Ins. Co.*, 52 Okl. 392, 153 P. 173 (1915). In the instant case, the parties were still in the negotiating stage pending the receipt of the medical report. The death of the applicant rendered impossible the receipt of the information the insurer deemed necessary in order to approve the policy. Receipt of premiums during the period between the application and approval is not sufficient evidence of a waiver of the conditions precedent, especially in view of the clear provision in the application

form for a total refund of these premiums in the event the company declined to issue the policy. *See Mutual Benefit Health & Accident Ass'n v. Edwards*, 174 Okl. 210, 50 P.2d 144 (1935).

■ Inola also contends a contract exists by virtue of Okl.Stat.Ann. tit. 36 § 3609 (1976), which provides that misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under a policy unless they are fraudulent or material to the acceptance of the risk. Inola asserts the lack of a medical examination is an immaterial omission under the circumstances of this case. This contention must fail because the statute is clearly intended to apply to prevent forfeiture of existing coverage by immaterial omissions or misrepresentations, not to create contracts when the parties failed to fulfill conditions precedent. *See Mid–Continent Life Ins. Co. v. House*, 156 Okl. 285, 10 P.2d 718, 723 (1932)..

■ Inola argues that the insurer waived whatever right it may have had to deny coverage by its collection of premiums before and after the death of the applieant and its failure to return all the premiums collected until suit was filed. The trial court held to the contrary, and we affirm.

Inola has cited several cases holding that an insurer's right to void an existing policy may be waived or become subject to estoppel by a failure or delay in returning premiums. *See Likens v. John Hancock Mutual Life Ins. Co.*, 246 F.2d 897 (10th Cir. 1957); *Security Ins. Co. v. White*, 236 F.2d 215 (10th Cir. 1956); *Great American Reserve Ins. Co. v. Strain*, 377 P.2d 583 (Okl.1963); *Allied Reserve Life Ins. Co. v. Baker*, 337 P.2d 747 (Okl.1959); *Connecticut Fire Ins. Co. v. Johnson*, 293 P.2d 607 (Okl.1955). In each of these cases an insurance policy had already been issued, and the courts were concerned with the waiver of the right to cause a forfeiture of the contract. A much different case is presented when it is contended that a contract is in effect created by waiver of conditions precedent. The Oklahoma courts have been quite careful to point out that the application of waiver and estoppel for wrongful retention of premiums has been confined to "conditions subsequent and matters of defense, which, together with their breach, must be pleaded by the insurer." *Great American Reserve*, 377 P.2d at 587, quoting *Moody v. Amazon Ins. Co.*, 52 Ohio St. 12, 38 N.E. 1011, 1012 (1894). While the law may apply the doctrines of waiver and estoppel to prevent a forfeiture, Oklahoma cases have held these doctrines inapplicable to the creation of a contract. *Security Ins. Co. v. White*, 236 F.2d 215, 218 (10th Cir. 1956); *Atlas Life Ins. Co. v. Schrimsher*, 179 Okl. 643, 66 P.2d 944, 949 (1937); *Mahone v. Hartford Life and Accident Ins. Co.*, 561 P.2d 142, 150 (Okl.App.1976).

■ Moreover, under Oklahoma law no estoppel can result from conduct based on pure mistake. *Agee v. Travelers Indemnity Co.*, 396 F.2d 57, 60 (10th Cir. 1968); *St. Louis & S. F. R. Co. v. Mann*, 79 Okl. 160, 192 P. 231, 233 (1920). Because waiver requires an actual intention to relinquish a known right, mistake likewise cannot provide a basis for waiver. *Atlas Life Ins. Co. v. Schrimsher*, 179 Okl. 643, 66 P.2d at 949 (1937). In this case, the principal support for the waiver and estoppel claims is the delay in returning the unearned premiums. Because the parties have stipulated that this retention was the result of error, it provides no basis for waiver or estoppel.

Affirmed.