Lillian M. ANDERSON, Individually, and as Administratrix of the Estate of Kermit Anderson, Deceased, Appellee,

v.

CONTINENTAL ASSURANCE COMPANY, Appellant.

No. 57428.

Court of Appeals of Oklahoma, Division No. 2.

April 19, 1983.

Rehearing Denied May 13, 1983.

Certiorari Denied July 11, 1983.

Released for Publication by Order of the Court of Appeals July 15, 1983.

Paul E. Quigley, Derryberry, Duncan & Gray, Oklahoma City, for appellee.

Yasodhara Mohanty, John R. Couch, Oklahoma City, for appellant.

MEANS, Judge.

This case originated in an action brought by Tecumseh Bank (Bank) against Lillian M. Anderson individually and as administratrix of the estate of Kermit Anderson. Bank sued Anderson to recover on a promissory note and sought foreclosure of Anderson's real estate. Anderson denied liability and sought indemnity by filing a third party action against Continental Assurance Company (CNA) to recover the proceeds of an alleged life insurance policy. The original action between Bank and Anderson was disposed of before the trial of the third party action between Anderson and CNA. A jury verdict was returned in favor of Anderson.

CNA appeals, asserting that it was entitled to judgment as a matter of law because a contract of insurance did not exist on Mr. Anderson's life. Having reviewed the record and applicable authorities, we agree with CNA and reverse the jury verdict.

Kermit and Lillian Anderson, husband and wife, executed a promissory note to Bank on July 23, 1979. The note was secured by a mortgage on their chicken farm near Shawnee. The purpose of the loan was to consolidate certain prior debts of the Andersons and to provide a small amount of working capital. Mr. Anderson desired life insurance protection to insure payment of the loan. Because of his age (69) and the

amount of the loan ($66,665.54), he was not eligible for credit life insurance. Eddie Melson, president of Tecumseh Bank, arranged for Richard McKibben, an independent life insurance agent, to meet with the Andersons. Immediately following the loan transaction, McKibben met with the Andersons in Melson's office to discuss various types of insurance policies. Mr. Anderson chose the CNA life insurance policy. He executed an application for a life insurance policy for $55,000 and tendered a premium of $1,209.79. Bank was named on the application form as the primary beneficiary with Mrs. Anderson as the secondary beneficiary. McKibben gave the Andersons a conditional premium receipt which was attached to the application form.

The conditional premium receipt provided in part that the initial application requirements were: (a) completion of Part I and Part II of the application; (b) completion of the first medical examination if required by the company's underwriting rules; and (c) completion of a second physical if required because of the insured's age or the amount of insurance applied for. The receipt further provided that these initial requirements had to be completed and received at the home office of CNA before the premium tendered was accepted and before an insurance policy was issued. The underwriting rules of CNA for a life insurance policy of $55,000 on the life of an insured over 50 years of age required, as a condition precedent to the issuance of a policy, that the insured complete a physical conducted by a licensed physician.

McKibben gave Kermit Anderson the necessary medical form to be completed by a physician together with the standard urine specimen bottle and package. However, Mr. Anderson never had the medical examination. He died on July 27, 1979, in an automobile accident in Missouri. CNA refused a death claim and refunded the tendered premium.

The determinative issue in this appeal is whether or not the application and conditional premium receipt created a contract of insurance.

CNA contends there was no triable issue of fact and that as a matter of law, a contract of insurance was not in force at the time of Mr. Anderson's death.

■ Title 36 O.S.1981 § 102, defines "insurance" as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." By its definition, the statute provides that the fundamental principles of contract law underlie the business of underwriting risks. The Supreme Court of Oklahoma has held that the application of a prospective insured constitutes an offer which must be accepted by the insurer before a contract of insurance arises.[1] In determining whether the terms embodied in the application and conditional receipt create a contract, we must keep in mind the principle that an insurance policy "must be construed to give effect to all of its provisions, where possible, and that its terms and provisions are to be accepted in their usual and ordinary sense."[2] Only in cases of ambiguity are the terms to be strictly construed against the insurer.[3]

The face of the "Conditional Premium Receipt" given to Mr. Anderson clearly provides that the tendered premium amount was "subject to the conditions on this and the reverse side of this receipt." In bold type capital letters on the face of the receipt appear the words, "No agent of the company and no broker is authorized to alter or waive any conditions of this receipt." On the reverse side of the receipt the required medical examinations as conditions precedent to coverage are set forth.

1. *Fidelity & Casualty Co. of New York v. Curtis Brown Co.,* 105 Okl. 136, 232 P. 99. (1924); *McCracken v. Travelers' Ins. Co. of Hartford, Conn.,* 57 Okl. 284, 156 P. 640 (1916); *Shawnee Mutual Fire Ins. Co. v. McClure,* 39 Okl. 535, 135 P. 1150 (1913).

2. *Great Northern Life Ins. Co. v. Cole,* 207 Okl. 171, 172–3, 248 P.2d 608, 610 (1952).

3. *Id.* at 173, 248 P.2d at 610.

As stated in *Inola Machine & Fabricating Co. v. Farmers New World Life Insurance Co.*, 631 F.2d 712, 714–15 (10th Cir.1980):

"The insurer could not have more clearly outlined as conditions precedent to the making of an insurance contract that the applicant undergo all required medical examinations and that the company approve of the application. Applicant knew of the medical examination requirement, and under Oklahoma law, applicant is charged with knowledge of the terms and legal effect of unambiguous provisions in the application form. *See Brown v. Connecticut Fire Ins. Co.*, 52 Okl. 392, 153 P. 173 (1915). In the instant case, the parties were still in the negotiating stage pending the receipt of the medical report. The death of the applicant rendered impossible the receipt of the information the insurer deemed necessary in order to approve the policy. Receipt of premiums during the period between the application and approval is not sufficient evidence of a waiver of the conditions precedent, especially in view of the clear provision in the application form for a total refund of these premiums in the event the company declined to issue the policy. *See Mutual Benefit Health & Accident Ass'n v. Edwards*, 174 Okl. 210, 50 P.2d 144 (1935)."

There was no ambiguity in the application or the conditional premium receipt. The conditional premium receipt was just that—conditioned upon the required medical examination. These requirements were clearly set forth on the back of the receipt. Unfortunately, Mr. Anderson did not complete the requirements. As his son observed, Anderson was unable to take the physical requested by the insurance company because of time restraints. Because this condition precedent was never met, the application was never approved by CNA, and a contract of insurance was never created.[4]

Mrs. Anderson contends that based on the language of the insurance application and the representations made to her and her deceased husband by McKibben, acting as CNA's agent, the physical examination was not required. She contends McKibben's representations were that her husband would not necessarily need another physical examination due to the fact that he had just taken one on May 29, 1979, and that the insurance company could accept it as evidence of good health. The language of the application stated that a physical examination was a condition of insurance "if required" by CNA. Anderson argues that she and her husband only knew what CNA required through the words of CNA's agent McKibben.

The evidence is quite clear that McKibben was an independent life insurance agent. As an independent agent, he was licensed to do business for several insurers. He was not an employee of CNA and was quite unfamiliar with CNA's procedures. Consequently, he did not write any insurance policies for CNA, nor was he authorized to issue an insurance policy. He was not authorized to waive any conditions on the conditional premium receipt. This waiver or limitation of an agent's authority applied across the board to any agent or broker who handled CNA life insurance applications. The conditional premium receipt on its face stated that: "No agent of the company and no broker is authorized to alter or waive any condition of this receipt." McKibben testified that he followed company rules both in accepting and soliciting an application form and in processing a claim.

McKibben was merely a soliciting agent for CNA whose authority was confined to taking applications for insurance and forwarding those to CNA for its approval or rejection. It is uncontradicted that McKibben never was given authority to waive any of the conditions of the application, including the conditions of the conditional premium receipt regarding medical examinations, nor were his alleged representations ever demonstrated to have been ratified by CNA.

---

4. See *Alt v. American Life Ins. Co.*, 337 F.2d 472 (10th Cir.1964); *Missouri State Life Ins. Co. v. Brown*, 150 Okl. 143, 300 P. 623 (1931).

As was stated in *Mutual Benefit Health & Accident Ass'n v. Edwards,* 174 Okl. 210, 211, 50 P.2d 144, 145 (1935):

"Whatever transpired between the applicant, Frank Edwards, and the soliciting agent, S.R. Wells, the plaintiff could not recover from the defendant, upon the theory that Wells had made an oral contract to insure Edwards, without some proof as to the authority of the agent Wells. The defendant specifically denied that Wells had any such authority, and that denial was verified. There was no evidence that the agent Wells had any authority to pass upon risks or issue policies or contract any insurance. The application and receipt indicate the character of the authority of Wells, and there is no question but that he was merely a soliciting agent acting under a district agent. The record shows that Wells had no authority to contract insurance and that he made no insurance contract with the applicant."

Anderson urges the court to adopt certain doctrines as the modern trend under which protection is afforded to the public regarding conditional receipts. These doctrines of reasonable expectation,[5] interim insurance,[6] and insurability[7] are advanced to establish the principle that an applicant for insurance has interim or temporary coverage from the date a premium is tendered to the insurance company.

Under the facts of this case, these doctrines are not applicable. There is no issue of bad faith or fraud or misrepresentation on the part of the insurance company or the agent.

The long established rule in Oklahoma is stated as: "The making of an application for insurance subject to approval or rejection of the company to which it is made, is merely a step in the creation of a contract to insure."[8] Taking this well established principle into consideration, we do not feel it appropriate for this court to legislate a new rule. If automatic, temporary coverage is appropriate at the moment a premium is tendered or accepted by an insurance company, then the legislative process is more appropriate to make that determination regarding a regulated industry such as the insurance business.

The only issue, as stated previously, is whether or not the application and conditioned premium receipt created a contract of insurance. Because Mr. Anderson never fulfilled the condition precedent by having a medical examination, the application never ripened into a contract for insurance.

Reversed with directions to the trial court to enter judgment for the defendant CNA.

BACON, P.J., and BOYDSTON, J., concur.

5. *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1978); *Smith v. Westland Life Ins. Co.,* 15 Cal.3d 111, 539 P.2d 433, 123 Cal.Rptr. 649 (1975).

6. *Gaunt v. John Hancock Mutual Life Ins. Co.,* 160 F.2d 599 (2d Cir.1947), *cert. denied,* 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947);

*Farmers New World Life Ins. Co. v. Crites,* 29 Colo.App. 394, 487 P.2d 608 (1971).

7. *Life Ins. Co. of Southwest v. Nims,* 512 S.W.2d 712, 714 (Tex.Civ.App.1974).

8. *Shawnee Mutual Fire Ins. Co. v. McClure,* 39 Okl. at 535–6, 135 P. at 1151.