## METROPOLITAN CASUALTY INS. CO. v. HEARD et al.

No. 26854.   Oct. 6, 1936.

Rehearing Denied Dec. 22, 1936.

Hal Crouch, Phillip N. Landa, and Richard L. Wheatley, for plaintiff in error.

L. L. Roberts, for defendants in error.

CORN, J.   The plaintiffs brought suit against Bert Moore, the bus driver for the White Oak school district, for the death of their child, recovered judgment, issued execution which was returned unsatisfied. Then the plaintiffs brought garnishment proceedings against the Metropolitan Casualty Insurance Company of New York, a corporation, which for convenience will be referred to herein as the insurance company.

The plaintiffs in their affidavit for garnishment state that prior to September 4, 1933, members of the White Oak school board paid a sum of money to this insurance company by delivering the same to its agent, Hugh Ratcliff, in consideration of the company's agreement to put in force an insurance policy to protect Bert Moore, driver of said bus, and to become liable for the payment of $5,000 in case of loss or damages, and that the company accepted said money and agreed to put said insurance in force and became liable and indebted to the said Bert Moore in case a judgment went against him, and that plaintiffs were entitled to have said sum applied on their judgment against Bert Moore.

The insurance company filed an answer denying liability, to which the plaintiff replied and elected to take issue, as provided by statute.

In the opening statement, the insurance company offered as its only defense that its agent, Hugh Ratcliff, had no means of knowing when to place the policy in force until he was informed by the school board that the school had opened. Throughout the trial and in the testimony of Hugh Ratcliff, the only witness for the insurance company, the company admitted that the money was accepted and retained by Ratcliff to put the policy of insurance in force, covering the school term. The plaintiffs denied that the school board or anybody else was to notify Ratcliff of the opening of school, and contended that from 1927, at the request of Ratcliff for the insurance company, the school board at the close of the school in the spring surrendered the old policy, which was always issued for a period of one year, and permitted the insurance company to retain the three months' unearned part of the premium for the year to put in force the policy for the next year, the same contract of insurance, and that while it was true that in some cases the policy did not come to the district clerk until a few days after the opening of school, it always provided that it began with the opening of school and covered the entire school term, and that for this particular year, in addition to the established custom, there was a definite understanding and agreement that Ratcliff, in behalf of this company, should rewrite this policy covering this term.

Hugh L. Ratcliff testified: That he did not write the policy until he was instructed to do so by the superintendent of the school, who came into his office on September 4th, told him that school was in session and advised him of the accident; that he was not accustomed to putting the policy in force until he was notified that school had opened.

462

On cross-examination, he admitted that shortly after this accident occurred (probably within an hour or so afterwards) Mr. Roberts came into his office and asked to see the policy and Ratcliff told him he thought he had mailed it out to Mr. Castro, clerk of the school board.

Mr. Castro, who was a member of the board at the time of the accident, testified that never at any time did Mr. Ratcliff require any member of the board to notify him that it was time to put the policy in force for another year, that he just went ahead and did that.

Several members of the school board testified that at the end of the school year the policy was canceled, that at the time of its cancellation it was understood that same would be re-renewed at the beginning of the next school year, and that the unearned premiums paid on the policy so canceled were retained by Ratcliff to be applied on a new policy of insurance; and that at no time had any member of the board notified said agent that school would start at a certain time, except one year when the term began in August instead of the usual time in September.

Within an hour or so after the accident and before Ratcliff had learned of the same, Roberts had a conversation with him and asked him about the policy, and in substance he told Roberts he had mailed it out to Castro. That language not only indicates that he was to issue the policy, but that he had already issued it.

This is borne out further by the cross-examination of Mr. Ratcliff, when the following occurred:

"Q. Do you remember, Mr. Ratcliff, that shortly after this accident occurred, on the same day and probably within an hour or so, I came down there and asked to see the policy and you told me that you thought you had mailed it out? A. I remember you came down, yes, but I don't remember—(hesitating) Q. And you said you had mailed it out to Mr. Castro, and I went out there to look for it? A. Ah-huh. * * * Q. This statement here is a statement you mailed those gentlemen on the same day that the accident occurred, to wit: On September 4, 1933, showing you had applied the return premium on the new policy, is that right? A. I believe that's right; yes, sir. Q. And it is correct? A. I think it is absolutely correct."

The insurance policy was found in the mail the day after the accident, and purports to have been issued the day before and specifically provides that it is written to protect this bus driver, Bert Moore, and Ratcliff admits that he retained the part of the unearned premium from the cancellation of a former policy held by this school district with this company for the protection of the same bus driver.

Ratcliff testified:

"Well, I can only be positive it was customary to retain the unearned premium and apply it on the same insurance in the fall."

In addition to his testimony just quoted, he did apply it on this policy as shown by the statement which he mailed out under the same date as the accident.

The argument of the insurance company that there was not a meeting of the minds of the contracting parties is without legal foundation, since all of the testimony is to the effect that it was to be the same policy, on the same party, for the same purpose, in the same amount, between the same contracting parties, or, in other words, in the nature of a renewal.

The contention by the insurance company to the effect that there is not sufficient evidence of Ratcliff's authority as agent of this company is without foundation. First, because on page 69 of the case-made is an admission or agreement between the parties that Hugh L. Ratcliff, or H. L. Ratcliff, was, at the time of the accident and had been for some years before, the duly authorized and acting agent of this garnishee corporation.

The record shows he did issue this insurance policy as the authorized representative of this company, on the day school opened, effective at 12 o'clock noon of said day, and that the accident happened in the forenoon of said day. It is further shown by the testimony that when he canceled the former policy he was to reissue this same policy, and that he retained the money belonging to this company and applied it on this policy.

We quote the following testimony at this time:

"Q. Did you ask Mr. Ratcliff concerning the agreement referred to, that this company was to cancel out the policy at the close of school term and retain the three months unearned premium for the purpose of putting the policy in force for the next school year? A. I did and he told me that was their agreement and had been for a number of years."

Since the testimony clearly shows that Ratcliff has been writing this kind of insurance for this company for a number of years, that he did write this policy and this company received and retained the money paid on it, they are not now in position to question his authority or the extent of his authority.

In Massachusetts Bonding & Ins. Co. v. Vance, 74 Okla. 261, 180 P. 693, this court held:

"On the trial of a case, where the authority of an agent to bind his principal is made an issue by the pleadings, and where there is any competent evidence bearing upon the issue of agency and the extent of the authority of such agent, and the evidence thereon is conflicting, the issue as to such agency and the extent of his authority are questions to be determined by the jury under appropriate instructions, and its finding thereon will not be disturbed on appeal. * * *

"For the purpose of defeating liability, a party will not be heard to say he never made a contract, and, inconsistent with such assertion, retain the benefits flowing from the alleged transaction."

And, further in the body of the opinion, we find the following:

"In view of these facts, we must hold that the company is without power to assert that its agent had no authority to make the contract which it is alleged he did, or to say no contract was made, and at the same time keep and retain all the benefits flowing from such alleged contract. By keeping and retaining the premium paid, the company is denied the right to say that Evans had no authority to make the alleged contract, or to deny that there was a parol contract of insurance."

The above is a case in point, both as to the contention of this company that the parol insurance contract is not good and that there is not sufficient evidence of the authority of the agent. In the above case, the agent took $5.30 as a premium and it appeared that this money was retained, and later a suit was brought to recover on the oral contract of insurance, and the company contended that the agent had no authority, yet the premium paid was retained as in this case.

We do not consider any merit in the argument of the insurance company that the company is not liable because Ratcliff testified he could have written this same insurance with one of the two or three other companies he represented. The evidence shows that when the last year's policy was canceled out it was understood that he should rewrite the same policy, and that he had written it with this same company for this school district the previous year. Certainly, the law will not presume that he had a right to take the money that belonged to this company left by the school board to renew this policy and apply it on a policy with another company, especially in light of the fact that he did

write this policy as directed by the school board.

Also, we do not consider seriously the proposition which they discuss, that Bert Moore was never mentioned in the dealings in this matter between Ratcliff and the school board as a party to this contract.

The name of Bert Moore is set forth as the assured in this insurance policy, and certainly it cannot be logically argued that Ratcliff, who claimed that this policy had been written and mailed out or had been lost somewhere when he was asked about the matter an hour or so after the accident and before he had knowledge of the accident, did not know whom he was writing this insurance to protect. It is not claimed anywhere in this action that Ratcliff did not know for whose protection he was writing this insurance, and the only reason he gave for not writing it after he claimed it was not written, was that he did not know school had started; and that the board was supposed to notify him. Every member of the school board said they were not to notify him and that he knew their school was starting on the first Monday in September, as it always had for many years, except one year referred to in the evidence when the school started in August, and they did then notify him of the change so he could put the policy in force a week earlier. It is also shown in the judgment introduced in this record that Bert Moore was the driver of this bus and the person the taxpayers of that district were buying insurance on in order to protect their children and had been buying insurance on, as the driver of their bus, for many years.

The insurance company has cited authorities supporting the old rule that an oral contract of insurance is not enforceable. This is no longer the rule, and this is no longer an open question in the state of Oklahoma and has been fully settled by this court in the case of Massachusetts Bonding & Ins. Co. v. Vance, supra.

This is a very ably written opinion and has been carried over in the A. L. R. vol. 15, p. 981, and is fortified by the numerous authorities therein assembled under the annotation immediately following the case, in which it is clearly stated that the unanimous rule is that such contracts are binding and enforceable.

This court later followed the above case in the case of De Noya v. Fidelity Phoenix Ins. Co., 110 Okla. 235, 237 P. 125; the first two paragraphs of the syllabus read as follows:

"Where a fire insurance company appoints an agent with authority to receive applications for insurance, pass upon and accept or reject the risk, receive the premium, and issue and deliver the policy therefor, such person is a general agent for the company and he may enter into an oral contract of insurance and bind his principal thereby.

"It is not essential that an insurance policy be issued and delivered before liability attaches under an insurance contract, which may rest in parol."

This was a case in which the insurance company was asked to put an insurance policy in force, which was to begin on June 26, 1920, and continue for three years, and after a loss the company reported that it had decided not to issue the policy. It was contended by the plaintiff that the agent had agreed to issue the policy as requested, and this court held such a contract binding.

In Home Ins. Co. of New York v. Southern Motor Coach Corp., 171 Okla. 94, 41 P. (2d) 870, a recent opinion written by Mr. Justice Welch, this court held in the fourth paragraph of the syllabus:

"Where insurance agent authorized by insured to keep properties insured advised secretary that certain policies had been canceled and that risk would be given to defendant insurer and instructed secretary to prepare policies, but secretary not having completed all of policies involved at close of day left them on her desk for final completion on following day, policies held in effect so as to cover fire loss occurring during nighttime, notwithstanding policies had not been signed."

Proposition 4, "The court erred in giving the jury instruction No. 2," is without merit.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, WELCH, and PHELPS, JJ., concur. GIBSON, J., dissents.