In re HAMM'S ESTATE.
STUART et al. v. HAMM.

*99 P. 2d 895.*

No. 28354.   Feb. 27, 1940.

Frank Mahan, of Fairfax, and Tillman & Tillman and J. C. Cornett, all of Pawhuska, for plaintiffs in error.

L. R. Smith, of Fairfax, C. S. MacDonald, of Pawhuska, and F. E. Chappell, of Oklahoma City, for defendant in error.

DAVISON, J. The question to be determined in this case is whether Murl Hamm, the surviving husband of Anna Trent Hamm, deceased, a full-blood Osage allottee, is of Indian blood and entitled to inherit a portion of her estate as one of her heirs at law. Murl Hamm and Anna Trent Hamm were married on the 23rd of December, 1929, subsequent to the Act of Congress of February 27, 1925, 43 Stat. L. 1008, section 7 of which prohibits inheritance by persons not of Indian blood from those of one-half or more Indian blood of the Osage Tribe,

except spouses of then existing marriages.

The case originated in the county court of Osage county, which decided as a matter of fact that the surviving husband was of part Indian blood of the Cherokee Tribe, and therefore entitled to inherit. On appeal the district court of Osage county arrived at the same conclusion.

There were no children, father or mother of Anna Trent Hamm left surviving her; thus her estate passed, one-half to her surviving husband and one-half to her collateral kindred, consisting of a sister and several nieces and nephews, unless the surviving husband is disqualified to inherit, in which event it should pass in toto to the collateral kindred, who appear herein as plaintiffs in error.

In presenting this case on appeal the plaintiffs in error first urge that:

"The evidence does not justify the finding that Murl Hamm is of Indian blood and entitled to share in this estate as an heir at law."

A determination of the merit of this proposition has required a careful review and analysis of the evidence produced by the parties. Due to its voluminous character, we shall not undertake to delineate the same in detail in this opinion. Our purpose will be served sufficiently by an epitomization of the salient features.

When this case was tried in the district court in June of 1937, Murl Hamm was 27 years of age. He claims to be 1/32nd Indian blood of the Cherokee Tribe. He attributes his Indian blood to his maternal ancestors. According to his testimony, he was many times advised of this fact by his mother and relatives on his mother's side of the family. His mother's name was Mary Hamm. His maternal grandmother's n a m e was Georgia ( also referred to as Georgianna) Moore Marshall, whose father was Joseph Green Moore (also referred to as Green Moore). There is a great amount of testimony in the record that, accord-

ing to family tradition and statements made by each of the foregoing ancestors and other relatives of the mother's line, Green Moore and his descendants were and are possessed of a degree of Indian blood.

In the trial of this case, the collateral kindred took the position that Green Moore was not of Indian blood, and this controversial issue became the focal point of a large part of the testimony of both parties hereto.

The date of Green Moore's birth is fixed as October 8, 1824, and the date of his death as approximately 1896. A picture of Green Moore was introduced in evidence. His features and appearance as thereby reflected were not such as to definitely establish Indian blood. However, they were not such as to preclude the possibility of its existence. A picture identified as that of his mother was also introduced in evidence. The features of his mother, referred to by the witnesses as Susan, Susan Ann, and Susanna Moore, are such as to leave little room for doubt concerning the presence of Indian blood in her veins.

The collateral kindred deny, however, that the woman Susan Moore was of Indian blood and that she was the mother of Green Moore, or, as they assert, the maternal relationship is, under the evidence produced in this case, at least doubtful. This challenge of relationship traverses the testimony of a number of the kindred of Murl Hamm to the effect that, according to family history as known to them, Susan Moore was the mother of Green Moore. On the question of identity, the picture produced, offered, and admitted originated with the kindred of Murl Hamm, who has preserved it as a family memento. A number of his relatives, immediate and remote, who testified as witnesses identified the picture as that of the mother of Green Moore, with whose likeness they were familiar in connection with family history.

The plaintiffs in error say the probative force of this evidence is destroyed by certain evidence touching upon the age of Susan Moore which it is said demonstrates that it would have been a biological impossibility for her to have been the mother of Green Moore by reason of her tender age at the date of his birth. A Cherokee census roll was made up in 1867, which, if correct, would have made her seven years old at the date of Green Moore's birth. However, it is not contended that the census roll is conclusive evidence on the question of age. It appears from the record and was found by the trial court that such roll was not altogether accurate on such matters. In addition to the foregoing, the plaintiffs in error also point to the testimony of witnesses who were acquainted with Susan Moore and who in retrospect estimated her age at such a figure as to render it improbable or impossible that she were the mother of Green Moore, if such estimates were correct.

The trial court found that the Cherokee census taker of 1867 was either mistaken or misinformed as to the true age of Susan Moore. It was also found that some of the witnesses erred in their retrospective estimation of her age. In view of other evidence in this case, which amply supports the view that Susan Moore was of sufficient age to be and actually was the mother of Green Moore, we are unable to say that this finding was not in accord with the proof. We thus conclude that the finding of the trial court that Susan Moore was the mother of Green Moore cannot be disturbed by this court.

On the question of her Indian blood (without reference to the quantum thereof, which we shall subsequently see is not material in this case) it may be observed that the inaccuracy of the census roll as to age does not necessarily impeach or destroy the probative force of the same as to the existence of Indian blood, since it is much more probable that objection would have been made by her contemporaries among the Cherokees to the erroneous presence of an alien on the rolls than to an error in the age of one entitled to be included in the census.

But, independent of this proof, other evidence amply supports the conclusion that she was of Indian blood. Not only the family history, but also her appearance, reflected by the identified photograph, strongly supports the adjudication that she was of Indian blood, and on this point the decision of the trial court must also be affirmed. In opposition to the foregoing proof, evidence of a negative character was produced by the plaintiffs in error. Witnesses were produced who were acquainted with Green Moore during his lifetime. These witnesses did not know of his Indian blood and thought of him as a white man. It can be and is urged that they or some of them could and should have known of his mixed blood. However, the fact that they were not possessed of this knowledge is insufficient to overcome the proof tending to show that he was part Cherokee, supporting the trial court's decision to that effect.

That Green Moore's appearance was such as neither to establish the existence or nonexistence of Indian blood in his veins is not only demonstrated by his appearance as reflected by his picture, but is also borne out by an interesting incident of his life narrated for us by one Frank Eaton who appeared as a witness.

According to the witness Eaton, who is of Cherokee blood and was well acquainted with Green Moore during his lifetime, the Cherokees had a law forbidding the hiring of a white man without first obtaining a permit to do so. He testified that sometime in the early 80's (1880-1889 A. D.) Green Moore was visiting in the vicinity where he (Eaton) lived, and while there, was employed by one Jasper Exendine to help get some logs for the building of a house. Jasper Exendine was arrested and tried for having employed a laborer in violation of the foregoing law. In the trial of the cause it was developed and determined that Green Moore was of Indian blood. The witness was present at the trial and heard the testimony which established Green Moore's connection with the Cherokee Tribe.

In connection with this testimony plaintiffs in error have called attention to the then existing Cherokee law from which it appears that the offense was in hiring, without a permit, a noncitizen of the Tribe (rather than a white man) and it is pointed out that white persons might by adoption become members of the Tribe. However, we are not in this case interested in the technical interpretation of the then existing Cherokee laws. The fact that the witness, a layman, may have erred in describing the exact basis of the charge does not discredit this testimony. Since the law as it actually existed was such that the question of whether Green Moore was possessed of Indian blood might, as a collateral line of inquiry, well have become a controversial subject, the existence of the law, even though in a form not accurately described by the witness, tends to corroborate rather than discredit him.

We have not undertaken to review in this opinion the entire evidence as reflected by the record. However, we have carefully read and analyzed all of the proof with the aid of comprehensive briefs presented by the parties. From our examination of the record, we are impelled to conclude that the finding of the trial court that Murl Hamm is possessed of Indian blood is not against the clear weight of the evidence.

It is urged by the plaintiffs in error that even though the evidence offered to support the view that Murl Hamm was 1/32nd Indian be accepted as sufficient, still he cannot prevail in this action because he was not an Indian. In support of their position, reliance is placed upon the case of Frank Keith v. United States et al., 8 Okla. 446, 58 P. 507, wherein we held that a person possessing 1/4 Indian blood was not an Indian within the meaning of that term as used in a congressional act then before us.

The act now before us does not limit inheritance to Indians: instead it uses the term "of Indian blood." Section 7, Act of Congress Feb. 27, 1925, provides:

"Hereafter none but heirs of Indian

blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title, or interest to any restricted lands, moneys, or mineral interest of the Osage Tribe: Provided, That this section shall not apply to spouses under existing marriages."

The gist of the plaintiffs in error's position is that the terms "Indian" and "of Indian blood" are synonymous, and that a person who is dominantly of white ancestry cannot be said to be "of Indian blood." We are unable to approve this argument. We are of the opinion that the meaning of the language chosen by Congress is clear and explicit and that a person may be "of Indian blood" within the meaning of the act even though he is less than one-half blood and the strain of Indian blood is therefore not dominant. To hold otherwise under this act might preclude inheritance by the direct offspring of members of the Osage Tribe where their Indian blood was less than one-half, since the act applies to persons other than spouses. In re Martin's Estate, Martin v. Carman et al., 183 Okla. 177, 80 P. 2d 561. No such result was intended.

We have already decided that the Indian blood which entitles one to inherit need not be of the Osage Tribe. In re Thompson's Estate, St. John v. Thompson et al., 179 Okla. 240, 65 P. 2d 442.

We therefore conclude that the quantum and character of Indian blood possessed by Murl Hamm was suffiicient to remove him from the class of persons excluded from inheritance.

Incidental complaint is also made by the plaintiffs in error concerning the proof in respect to contradictory evidence appearing therein. It is pointed out that the census roll of 1867, showing Susan Moore's age at 50 years, was contradicted by other proof offered by Murl Hamm, and that other discrepancies in the proof also appear in the proof offered by Hamm.

The complaint concerning this evidence is that it constitutes a contradiction and impeachment of the parties' own evidence. The complaint is not stressed and requires only incidental treatment. While as a general rule a party cannot impeach his own witnesses, he is not prohibited from introducing other evidence of a contradictory character for its independent probative effect.

The evidence alluded to was not offered for impeachment purposes, and the fact that it was contradictory of other evidence offered did not render it objectionable. We said in the syllabus in the case of H. L. Canady Co. et al. v. McDougal et al., 135 Okla. 63, 273 P. 1000:

"A party is not concluded by the statement of any witness, but has the right to introduce other competent evidence to show the real facts, although such testimony may incidentally contradict or tend to impeach the testimony of a previous witness."

See, also, Westgate Oil Co. et al. v. McAbee, Adm'r, 181 Okla. 487, 74 P. 2d 1150.

Thus the complaint concerning discrepancies in the evidence offered by Murl Hamm is not well taken.

There is also some discussion in the briefs concerning the character of evidence herein offered to show the ancestry and Indian blood of Murl Hamm.

It is generally recognized that, subject to some limitations or restriction, matters of family history, relationship, and pedigree constitute an exception to the rule excluding hearsay evidence (20 Am. Jur. 409, par. 468 et seq.) and such matters may be established by members of the family (In re Estate of McDade, Walker v. Tyner et al., 95 Okla. 120, 218 P. 532) or by persons whose knowledge of the subject was derived from close acquaintance with the propositus and his family. Neustadt et al. v. Coline Oil Co. et al., 141 Okla. 113, 284 P. 52.

Our examination of the evidence in this case reveals no prejudicial variation or departure beyond the limitations authorized by the foregoing exception to the rule excluding hearsay.

The plaintiffs in error also complain of the error of the trial court in excluding

the deposition of one Burgess Moore. This deposition was taken by Murl Hamm, but not offered in evidence by him. His adversaries sought to use it in the trial. It was excluded. However, in connection with the hearing on motion for a new trial, it was then admitted and considered by the trial court, and the court determined that the evidence therein contained was not of such a nature as to warrant a different disposition of the cause than that previously announced.

Since the evidence contained in the deposition received the consideration of the trial court while the cause was still within its control, the error, if any, in its previous exclusion was not prejudicial. This court will not reverse a cause for the admission of incompetent evidence or the exclusion of competent evidence, unless it appears that the same has prejudiced the rights of the complaining party. City of Oklahoma City v. Stewart et al., 76 Okla. 211, 184 P. 779; Carden et al. v. Humble, 76 Okla. 165, 184 P. 104; Cherokee Public Service Co. et al. v. Orr, 178 Okla. 96, 62 P. 2d 58.

Finding no prejudicial error in the proceedings before us, the decision of the trial court is affirmed.

WELCH, V. C. J., and RILEY, OSBORN, and CORN, JJ., concur.