HARTFORD FIRE INS. CO. v. WADE.

No. 35608.  May 19, 1953.

Rehearing Denied June 9, 1953.

*257 P. 2d 1064.*

Rittenhouse, Hanson & Evans, Oklahoma City, for plaintiff in error.

Robert J. Bell and Charles B. Tucker, McAlester, for defendant in error.

JOHNSON, V.C.J. This is an appeal from the district court of Haskell county, Oklahoma, by Hartford Fire Insurance Company, from a judgment against it for $1,812.52, with interest at 6% per annum from November 7, 1949, for loss by fire of insured's stock of merchandise in Keota, Oklahoma.

Plaintiff, J. T. Wade, alleged that his property at the time it was destroyed by fire was insured by an insurance policy which had been issued to Paul Finch while he was the sole owner thereof; that subsequent to the issuance of the policy and

" * * * on September 5, 1949, the said Paul Finch, for a good and valuable consideration, transferred, assigned and sold to this plaintiff a one-half (½) undivided interest in the properties above described, known as the Finch Grocery, consisting of stock of merchandise, fixtures, oleo license, cigarette license and unearned insurance with defendant company, whereby the plaintiff became the owner of a one-half (½) undivided interest therein; that the said defendant, through its duly authorized agent, servant and employee, to-wit: A. L. Price, was duly notified of said transfer of interest as evidenced by bill of sale, a true and correct copy of which is attached hereto as Exhibit B and made a part hereof, the said A. L. Price then and there witnessing said bill of sale; that the plaintiff relied upon the knowledge of said defendant through its agent (the knowledge of said agent being imputable to the defendant, and relied upon the defendant to reform said insurance policy, if necessary (as was its duty to plaintiff) so as to protect and cover the interest of this plaintiff; that by virtue of the silence of said defendant, and the knowledge of said defendant, as aforesaid, of said transaction, the said plaintiff was induced to refrain from doing what he otherwise probably would have done, to-wit: procuring a rider on said policy of insurance showing his interest; by virtue of which, in conjunction with the other facts hereinafter pleaded, defendant is estopped from claiming that thereby said insurance policy was forfeited in whole or in part."

Exhibit B reads:

"Exhibit B.

"Keota, Okla.

"Bill of sale

"To whom it may concern

"This is to certify that I have this 5th day of September, 1949, sold to J. T. Wade (½) one half interest in the Finch grocery, consisting of stock of merchandise $4252.80, fixtures, 3,132.05, Oleo license $5.50, Cigarette license $7.47 unearned insurance $74.76, making a total of $7,472.58,

"The above is to be clear of debt in every respect.

"/s/ Paul Finch

"Witness to signature

"/s/ A. L. Price
"/s/ Claude Cason"

that the insurance company represented to plaintiff after the fire that the company was only liable for the amount that Paul Finch owned in the stock of merchandise at the time of the fire, or a one-half undivided interest; that the plaintiff would not be recognized as a part owner of the property and was not covered by the policy; that the company settled with Paul Finch and refused and failed to settle with plaintiff. Plaintiff prayed judgment for his

loss of one-half interest in the stock of merchandise and fixtures in the sum of $1,812.52 with interest at 6%.

Defendant answered admitting all the allegations of plaintiff except that the transaction in which the plaintiff acquired a half interest in the stock of merchandise and fixtures was within the knowledge of the defendant, Hartford Insurance Company.

Upon the issues joined, the cause was submitted to the jury. The jury returned a verdict for plaintiff, and the trial court rendered judgment thereon.

For reversal, defendant interposes five assignments of error, the substance of which are: That the court erred in (1) overruling defendant's demurrer to the petition, (2) overruling defendant's demurrer to the evidence, (3) overruling defendant's motion for a directed verdict, (4) admitting incompetent, irrelevant and immaterial evidence over the objections and exceptions of the defendant, (5) giving instructions Nos. 2 and 3 over the objections and exceptions of defendant.

Plaintiff's evidence relied upon to establish his cause is outlined in his brief as follows:

"Only two witnesses testified, to-wit, plaintiff, Wade, and Claude Cason. Defendant has specifically admitted the residence of plaintiff, the domestication of defendant, the fact that plaintiff was the owner of a one-half interest in the stock and fixtures known as Finch Grocery; the payment of the premium to agent, Price, the delivery of the insurance to Paul Finch, the amount of the insurance, and that the fire occurred and the loss was adjusted and paid as alleged. Therefore, the plaintiff, Wade, in addition to the pleaded and admitted facts, testified that he bought a one-half interest for cash on invoice price; that the store was located on the main street of the little town of Keota, Oklahoma; that plaintiff had known defendant's agent, Price, since 1927 and Price had talked with him about buying insurance on other property. That on the morning, being Sunday, when the inventory was being made by six people, Mr. Price came into the store a time or two and that this was a town of about five hundred people; that the following day the bill of sale was written and witnessed by agent Price; that plaintiff paid Finch for a one-half of the unearned insurance of $74.76. Plaintiff thereafter worked in the store on Saturdays and two or three times per week an hour or two before closing time and that he had never worked there before; that he did not talk with Mr. Price about insurance as Paul Finch's name was in there and the store was run by Finch and that he relied on Mr. Price. Plaintiff testified that the store burned; that the insurance company did not recognize his interest in the policy and that he acted as Finch's attorney in fact in cashing the draft as Mr. Finch had left the country. He just settled Finch's loss.

"The other witness was Claude Cason whose store was adjacent to Finch's Grocery being separated only by a wire fence and the door between them was never closed. Agent Price's insurance office was just across the street. Six people made the inventory on Sunday and agent Price was there at the time. After the inventory was complete and reduced to writing, and on the following evening the bill of sale was executed. Agent Price was there. At the time of the execution of the bill of sale Mr. Price was talking with Mr. Wade. That witness Cason asked agent Price to act as additional witness to the 'bill of sale'. He further testified, without objection, that Keota is a town of four or five hundred people and that it was a matter of general knowledge about Mr. Wade having bought in. That Wade had never worked there before but he did afterwards. After the fire loss, the question of the bill of sale came up and Mr. Staton, the adjuster, was there. When Mr. Staton heard about the bill of sale he said that it would probably 'complicate matters'. He said that he would have to send it to the company.

"At the bottom part of page 8 of the brief, in quoting testimony of Mr. Finch, the quotations are actually from depositions. We do not find where the depositions were introduced in evidence

but do not think this is material. However, this testimony of Wade omits the questions and answers shown at pages 35 to 37 of the case-made, which point out that Wade, in participating in the settlement, did so under the power of attorney from Mr. Finch. In the same capacity he endorsed the draft. It should be noted that the draft is made to Paul Finch and endorsed by Paul Finch through Claude Cason and Terrill Wade; attorneys in fact."

Assuming without deciding that plaintiff's petition was sufficient to withstand a demurrer, we are then confronted with the action of the court in overruling defendant's demurrer to the evidence.

The evidence wholly fails to establish an implied contract, or right to reformation of the insurance contract with Finch so as to cover property owned by Wade. The admitted fact that Price subscribed his name as one of the witnesses on a bill of sale which, if he had read, would have disclosed that Wade had purchased a half interest in a business upon which the company he represented as an agent had written an insurance contract with the seller, Finch, prior to the sale, was insufficient in law to constitute a basis for the jury to conclude that Price, the agent, read and understood the bill of sale, or that Wade, the purchaser, was at that moment making an offer to purchase insurance, or that Wade, in the absence of express rejection of the offer, would deem the offer accepted and expect the issuance of an insurance policy payable to him. It was not shown from the evidence that agent Price read or understood the contents of the bill of sale, or that the purchaser, Wade, was then making an offer to purchase insurance, or that Wade, in the absence of express rejection of the offer, would deem the offer accepted and would expect the issuance of an insurance policy payable to him.

The record discloses that more than two months after agent Price signed the bill of sale as a witness to the signature of the seller which transferred a half interest in Finch's grocery to Wade, the store was destroyed by fire; that the value of the store at the time of the fire was $11,374.96; that defendant paid Finch one-half that sum as his insured interest in the property, which left $1,812.52, the balance of the amount of Finch's policy; that neither Wade nor Finch ever mentioned anything about insurance on Wade's interest in the store to Price, the agent, either at the time of the sale or after the sale and transfer of the half interest in the store to Wade, though his office was just across the street (of the small town) from the store.

The words and conduct of Wade and Price cannot be construed either as an oral agreement, or implied contract to insure Wade's interest in the property.

Nothing is disclosed in the record of oral statements or conduct of Price, the agent of defendant, to sustain plaintiff's contention of the existence of an oral or implied application for insurance, or the existence of a contract for insurance, either oral or implied. Title 15 O.S. 1951 §1 et seq. In discussing what constitutes a contract of insurance in Dorman v. Connecticut Fire Ins. Co., 41 Okla. 509, 135 P. 262, we said:

"A contract of insurance consists of an agreement between the insured and the insurer, including the following elements: (1) The subject-matter; (2) the risk insured against; (3) the amount; (4) the period of risk; and (5) the premium; and there is no contract until the minds of the parties meet in these respects. 1 Briefs on the Law of Ins., by Cooley, 368, 392, 411, 513; 1 Law of Ins. by Charles Beach, Jr., 507; 1 May on Ins. §§43-65; 1 Joyce on Ins. §§45-50; Kerr on Ins. §40, pp. 73-77; Id. §53 p. 113; Shawnee Mut. Fire Ins. Co. v. McClure, 39 Okla. 535, 135 P. 1150, and cases there cited.

"* * * An application for insurance is not itself a contract, but is a mere proposal, which requires acceptance by the insurer through some one actually or apparently authorized to accept the

same to give it effect as a contract. 1 Briefs on the Law of Ins., by Cooley, 413; 1 Joyce on Ins. §54; 1 May on Ins. (3rd Ed.) §43H; Elliot on Ins. §106; Kerr on Ins. §51-52; Richards on Ins. (3rd Ed.) §282; Van Arsdale-Osborne v. Young, 21 Okla. 151, 95 P. 778; Shawnee Mut. Fire Ins. Co. v. McClure, supra."

Since obviously there is no oral contract, the question of whether a contract is to be implied from the above admitted existing facts becomes a matter of law. 17 C.J.S. Contracts, §611, p. 1274; Mead Bros., Inc., v. State Industrial Commission, 144 Okla. 279, 291 P. 571.

The parties each cite many cases to sustain their contentions, but from an examination of these cases, and our independent search, we have been unable to find any insurance case which does not involve in some manner a written application for insurance, and to that extent, this case, under the facts, presents to this court a question of first impression. However, other jurisdictions, K. C. Working Chemical Co. v. Eureka, Sec. Fire & Marine Ins. Co., 82 C.A. 2d 120, 185 P. 2d 832; Boswell v. Gulf Life Ins. Co., 197 Ga. 269, 29 S. E. 2d 71; Celina Mutual Cas. Co. v. Baldridge, 213 Ind. 198, 10 N.E. 2d 904, 12 N.E. 2d 258; American Casualty Co. v. Ricas, 179 Md. 627, 22 A. 2d 484; Neuner v. Gove (Mo. App.) 138 S. W. 2d 689; Bekken v. Equitable Life Assur. Soc. of U.S., 70 N.D. 122, 293 N.W. 200, have applied the principles which we think sustain our conclusions herein. These cases emphasize the fact that before there can be an oral or implied application for insurance, there must have been an actual application or offer to purchase insurance, an actual acceptance of the offer and a complete meeting of the minds of the insured and the insurer. Proof of these essential elements being absent in the instant case, the court erred in overruling defendant's demurrer to the plaintiff's evidence. The cause is therefore reversed, with directions to vacate the judgment, sustain the demurrer to

plaintiff's evidence, and dismiss the action.

In view of what we have said, we deem it unnecessary to discuss the other alleged errors.

HALLEY, C.J., and CORN, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur. WELCH, J., dissents.