**GLENS FALLS INSURANCE COMPANY,**
a corporation, Plaintiff in Error,

v.

Ernest E. **JOHNSON** and Geraldine Johnson,
Defendants in Error.

No. 40703.

Supreme Court of Oklahoma.

May 25, 1965.

Rehearing Denied July 6, 1965.

Hanson & Peterson, by Walter D. Hanson, Oklahoma City, for plaintiff in error.

Gordon & Belote, by Leon G. Belote, McAlester, for defendants in error.

HALLEY, Chief Justice.

Defendants in error, Ernest E. Johnson and Geraldine Johnson, commenced this action in the District Court of Pittsburg County, as the plaintiffs, against the plaintiff in error, Glens Falls Insurance Company, a corporation, and A. B. Chapman and Paul N. Carris, individually and as partners doing business as Chapman-Carris Agency, as the defendants, to recover the proceeds from a parol contract of insurance. Parties will be referred to here as they appeared in the trial court or by name.

Plaintiffs' petition alleged that on March 6, 1957, they entered into an oral contract of insurance with the defendant, Glens Falls Insurance Company, through its agent, A. B. Chapman, whereby said insurance company agreed to insure their dwelling at 805 East Cherokee, McAlester, Oklahoma, against loss by fire for a period of three years from March 6, 1957, in the sum of $2,000, and for a premium of $30.00, which was paid by plaintiffs to said agent; and that the insurance company, through said agent, further agreed to deliver to plaintiffs its policy evidencing said contract of insurance. Further that on February 23, 1960, plaintiffs' dwelling was damaged by fire in a sum in excess of $2,000; and that thereafter on February 24, 1960, plaintiffs notified the defendant insurance company of their fire loss and demanded payment, which was refused.

Plaintiffs' petition further alleged in the alternative that if the said agents were not acting within the scope of their authority for Glens Falls Insurance Company, then the said agents were the insurers of plaintiffs' dwelling against loss by fire, and personally liable to plaintiffs in the sum of $2,-000. The petition prayed judgment against the defendants for $2,000.

The agents answer by general denial. The insurance company's answer denied all the allegations contained in plaintiffs' petition, except such as were admitted therein. It admitted A. B. Chapman and Paul N. Carris were its "policy writing agents." Plaintiffs dismissed their action with prejudice against the agents and the matter proceeded to trial against Glens Falls Insurance Company before the court and jury.

Ernest E. Johnson testified at the trial that he purchased a residence from John Finck in 1956; and that at the time, plaintiffs were informed by John Finck that the house was covered by an insurance policy with Mr. Chapman, but that it was going to run out. He further testified that thereafter on November 1, 1956, plaintiffs received a Notice of Cancellation from Glens Falls Insurance Company, by which the insurance company cancelled "Glens Falls Insurance Company Policy No. 7621—Dated June 8, 1956 $2,000.00—Fire & Extended coverage on * * * one-family dwelling, situated on 8th & Cherokee, McAlester, Okla." and notified plaintiffs and John Finck thereby that the insurance company's liability under the policy would expire on November 8, 1956, because of non-payment of a $30.00 premium. (Policy No. 7621 was originally for a term of three years and Mr. Finck was named therein as mortgagee.)

Mr. Johnson further testified that plaintiffs had no business transactions with A. B. Chapman prior to March 6, 1957; that they did not make application for the insurance policy described in the cancellation notice; and that after receipt of said notice and at noon on March 6, 1957, he went to the office of A. B. Chapman and "told him I wanted the same kind of Insurance Policy that Mr. Finck had, and he said 'O.K.'" That at that time he paid A. B. Chapman the sum of $5.00 as part payment on the in-

surance policy, which was accepted by A. B. Chapman. (A receipt in evidence indicates that A. B. Chapman received $5.00 in cash from Ernest Johnson on 3–6–57 for insurance, with an unpaid balance of $25.00) Mr. Johnson also testified that he never received any notice that the policy described in the Notice of Cancellation had been reinstated or that its cancellation had been rescinded; and that on February 23, 1960, plaintiffs' house was extensively damaged by fire. Mr. Johnson also testified that plaintiffs received a second cancellation letter, dated August 18, 1959, by which "Policy No. 7703" of Glens Falls Insurance Company was cancelled effective August 29, 1959, but that they ignored the notice because "we were covered for three years and it had not been three years, and we knew that we were covered for fire and windstorm for three years. We had paid for it." (Policy No. 7703 was a renewal of Policy No. 7621 in Glens Falls Insurance Company and insuring plaintiffs' dwelling against loss by fire for a period of three years from June 8, 1959, in the sum of $2,000 for a premium of $26.46.)

Geraldine Johnson, wife of Ernest E. Johnson, testified that she went to Mr. Chapman's office on the last of September or first of October, 1957, and "finished paying the insurance premium." (A receipt in evidence indicates that M. Maxey, an employee of A. B. Chapman, received $25.00 in cash from "Earnest Johnson" on 10–1–57 for insurance, leaving no unpaid balance owing.)

Billy Ted Trammel was called as a witness by the plaintiffs and testified as to the amount of damages plaintiffs' dwelling sustained in the fire. However, it was admitted that plaintiffs' house was damaged by fire in excess of $2,000.

A. B. Chapman, called as a witness by the plaintiffs, testified he authorized and directed that the Notice of Cancellation, dated November 1, 1956, be mailed to plaintiffs; that he did not give plaintiffs notification that the said cancellation notice was ineffective; and that Ernest Johnson paid him

$5.00 on March 6, 1957. Mr. Chapman further testified on cross-examination as follows:

"Q. Mr. Chapman, on March 6, 1957, did Ernest Johnson ask that you write a policy of insurance for him?

"A. No, sir.

"Q. Did you on that day agree on behalf of Glens Falls Insurance Company or any other Company to write a policy of insurance for Ernest Johnson?

"A. I did not.

"Q. Did Mr. Johnson come to your office and make the statement to you, that I want an insurance policy just like the one Mr. Finck had?

"A. No sir, not to my knowledge."

Margaret Maxey, called as a witness by the insurance company, testified that she was employed by the Chapman Agency from 1956 through 1959 as office manager and underwriter; that she sent statements to Mr. Johnson for the premium due on Policy No. 7621 of Glens Falls Insurance Company; and that the premium for the said policy of $30.00 was paid by the plaintiffs in payments of $5.00 on March 6, 1957, and $25.00 on October 1, 1957. Further that she mailed the Notice of Cancellation, dated November 1, 1956, to Mr. Johnson and Mr. Finck, but not to Glens Falls Insurance Company because Mr. Finck came into the office on November 5, 1956, and guaranteed payment of the premium. That she did not notify plaintiffs that the Notice of Cancellation, dated November 1, 1956, was ineffective, but that to the best of her recollection Mr. Johnson was present when Mr. Finck guaranteed the premium payment.

Josephine Miller, called as a witness for the insurance company, testified that she had been employed by the Chapman-Carris Agency for five years; that she prepared the renewal policy, Policy No. 7703 in Glens Falls Insurance Company, on plaintiffs' dwelling; and that she also prepared and mailed the Notice of Cancellation, dated August 18, 1959, to the plaintiffs.

A. B. Chapman, called as a witness for the insurance company, testified that when he wrote a policy of insurance for Glens Falls Insurance Company, he had forty-five days from the end of the month in which the policy was written to pay the premium on the policy to the company; and that on the expiration of forty-five days, he paid the company whether he collected the premium from the insured or not. He identified his "account current" or statement of premiums due Glens Falls Insurance Company for June, 1956, which indicated that Policy No. 7621 was written June 8, 1956, for a premium of $30.00. He further identified his "account current" with Glens Falls Insurance Company for June, 1959, which indicated that Policy No. 7703 was written June 8, 1959, for a premium of $26.46; and his "account current" with Glens Falls Insurance Company for August, 1959, which showed cancellation of Policy No. 7703 and a return of premium to the agency of $24.63. He further testified that when plaintiffs paid $5.00 on March 6, 1957, and $25.00 on October 1, 1957, they owed that sum of money to the agency for the premium advanced by the agency to Glens Falls Insurance Company on Policy No. 7621; and further that he would not have written a new policy for them on March 6, 1957, because they already had a policy with badly delinquent premiums.

The verdict and judgment at the conclusion of the trial were for plaintiffs against Glens Falls Insurance Company for $2,000. The company filed a motion for new trial and from the order denying said motion, perfected the present appeal. It assigns twelve assignments of error as grounds for reversal and argues them under two general propositions.

The company's first proposition is that "The dismissal by the plaintiffs with prejudice as to the agents operated as a release of the defendant, Glens Falls Insurance Company" and cites Callahan et al. v. Graves, 37 Okl. 503, 132 P. 474; Cressler v. Brown et al., 79 Okl. 170, 192 P. 417; Consolidated Gas Utilities Co. v. Beatie,

167 Okl. 71, 27 P.2d 813; Shell Petroleum Corporation v. Wilson et al., 178 Okl. 355, 65 P.2d 173; Mid-Continent Pipeline Co. v. Crauthers, Okl., 267 P.2d 568; and Barsh et al. v. Mullins, Okl., 338 P.2d 845, as authority for the proposition. It argues that plaintiffs' cause of action was predicated wholly upon the tort liability of the company's agents. That its liability, if any, was derivative and based entirely upon the agents' primary liability and that plaintiffs' dismissal with prejudice as to the agents exonerated the company from liability.

■ This proposition and argument are without merit. Plaintiffs' cause of action was based upon an oral contract of insurance allegedly entered into with Glens Falls Insurance Company through its "policy writing agents" and not, as the company contends, on the tort liability of the company's agents. Its liability under the contract, if any, was therefore primary, not derivative and plaintiffs' dismissal with prejudice as to the company's agents did not exonerate the company from its contract liability.

■ In 46 C.J.S. Insurance § 1267 b, this language is found:

"* * * An action on an oral contract of fire insurance made by a general agent of the insurance company is properly brought against the company rather than against its agent. * * *"

20 Appleman, "Insurance Law and Practice" § 7197, states:

"Where an oral contract to insure against fire is the undertaking of an insurer made by a duly authorized agent, the right of action for a breach is against the principal, and not against the agent. * * *"

■ The company's answer, as previously indicated, admitted that A. B. Chapman and Paul N. Carris were its "policy writing agents" and it has long been the law in Oklahoma that where a fire insurance company appoints a policy writing agent for the company, that agent may bind the

company by oral contracts of insurance and the liability of the company attaches under such an oral contract without the issuance and delivery of a policy. McCracken, Guardian, v. Travelers' Ins. Co. of Hartford, Conn., 57 Okl. 284, 156 P. 640; Massachusetts Bonding & Ins. Co. v. Vance, 74 Okl. 261, 180 P. 693, 15 A.L.R. 981; De-Noya v. Fidelity Phoenix Ins. Co., 110 Okl. 235, 237 P. 125; Commercial Casualty Ins. Co. v. Connellee, 156 Okl. 170, 9 P.2d 952; Metropolitan Casualty Ins. Co. of New York v. Heard et al., 178 Okl. 461, 63 P.2d 720; United States Fire Ins. Co. of New York et al. v. Rayburn, 183 Okl. 271, 81 P. 2d 313; and Federated Mutual Implement & Hardware Insurance Company v. Fairfax Equipment Company, Inc., 10 Cir., 261 F.2d 207.

The cited cases relied upon by the company as authority for its first proposition are all actions predicated upon the relationship of master and servant, where the master's liability, if any, is based solely upon the negligent acts of the servant under the rule of respondeat superior. They are not applicable to an action based upon contract.

■ The company's second proposition is that "The plaintiffs' evidence was insufficient to submit the case to the jury." It conceded in this proposition that the basic issue in the cause was whether the company, through its "policy writing agent" (A. B. Chapman), entered into an oral contract of insurance with plaintiffs on March 6, 1957. However, it contends here that plaintiffs' evidence was insufficient to establish the necessary elements of a parol contract of insurance and cites Hartford Fire Ins. Co. v. Wade, 208 Okl. 573, 257 P.2d 1064, as authority for this contention. In that case, this Court said that before there can be a valid contract of insurance, there must be an actual application or offer to purchase insurance and an actual acceptance of the offer, including therein the following elements: 1. The subject of the insurance; 2. The risks insured against; 3. The amount of indemnity; 4. The

time when the risk attaches and ends; and 5. The amount of the premium; and that there is no contract until the minds of the parties meet in these respects.

■ Mr. Johnson testified that at noon on March 6, 1957, he went to the office of A. B. Chapman and "told him I wanted the same kind of Insurance Policy that Mr. Finck had and he said 'O.K.' ". This was an offer to purchase insurance and an acceptance of the offer, if the testimony was true. There is no evidence that Mr. Finck had a policy of insurance, other than Policy No. 7621 with Glens Falls Insurance Company, in which he was named as mortgagee in the "loss payable clause." Therefore the above quoted offer and acceptance included therein the subject of insurance, plaintiffs' dwelling; the risks insured against, fire and extended coverage; the amount of indemnity, $2,000; the time when the risk attached and ended, March 6, 1957, to March 6, 1960 (policy term for three years); and the amount of the premium, $30.00. We hold that plaintiffs' evidence was sufficient to establish the necessary elements of a parol contract of insurance.

■ The company next argues that since plaintiffs called A. B. Chapman as "their witness", they were concluded by his testimony that no such conversation took place as testified to by Mr. Johnson; and that therefore "plaintiffs' evidence could not preponderate on this issue." We feel this argument was amply answered by the second paragraph of the syllabus in In re Hamm's Estate, 186 Okl. 610, 99 P.2d 895, where we said:

"A party is not concluded by the statement of any witness, but has the right to introduce other competent evidence, to show the real facts, although such testimony may incidentally contradict or tend to impeach the testimony of a previous witness."

See 32A C.J.S. Evidence § 1040(1); 3 Wigmore on Evidence (3rd Ed.), § 907; and Knight v. Cecil, 110 Okl. 57, 235 P. 1107.

We believe that Illinois Bankers Life Ass'n v. Hardy, 174 Okl. 326, 51 P.2d 292, 295, is in point here. There we said:

"We have here a sharp dispute of fact turning upon the question of the credibility of witnesses, and of the weight and value to be given their testimony. These are questions for determination by the jury under proper instruction from the trial court. * * * It is for the jury to determine the credibility of the witnesses and the weight and value of their testimony. * * * The jury here saw the plaintiff's witnesses, and heard them testify directly and upon cross-examination. That jury, upon oath, considered all of the evidence, and accepted and believed the sworn statements of plaintiff's witnesses. If that testimony is true, there is no escape from the conclusion that this insurance policy was reinstated as asserted by plaintiff, and as determined by the jury and approved by the trial court. We cannot substitute a contrary view as to the credibility of a witness or weight of his testimony for the verdict of the jury so approved by the trial court. In view of all the circumstances, it cannot be urged that plaintiff's evidence is so improbable as to be unworthy of belief, or to constitute no evidence to sustain the verdict. Under the rule of many decisions, we must accept the jury verdict on this question of fact."

The company cites Henderson v. Gifford, Okl., 318 P.2d 404; and Petty v. First National Bank of Quitman, Tex.Civ.App., 278 S.W.2d 361, as its authority for this argument. The Henderson case, supra, was an equity case where a constructive trust could only be established by testimony which was clear, cogent and convincing. It is not in point here. In the Petty case, supra, the defendant was the only witness called by plaintiff to establish a partnership, and therefore it is not in point in its factual situation.

The judgment of the trial court is affirmed.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD and HODGES, JJ., concur.

IRWIN and BERRY, JJ., dissent.

IRWIN, Justice (dissenting).

In Hartford Fire Ins. Co. v. Wade, 208 Okl. 573, 257 P.2d 1064, we said:

"A contract of insurance consists of an agreement between the insured and the insurer, including the following elements: (1) The subject-matter; (2) the risk insured against; (3) the amount; (4) the period of risk; and (5) the premium; and there is no contract until the minds of the parties meet in these respects. * * * *"

In my opinion, there was not a meeting of the minds between plaintiff and the insurance agent Chapman concerning the period of risk. Plaintiff argues that the period of risk began March 6, 1957, and ended March 6, 1960; and defendant contends the period of risk began June 8, 1956, and ended August 29, 1959, the alleged effective date of the cancellation of the renewed policy of insurance. In my judgment, the record conclusively discloses there was no subsisting contract of insurance in force when the plaintiff sustained his loss, and that plaintiff had knowledge, beyond doubt, that his insurance had either expired or had been cancelled. My views are based on the following facts disclosed in the record.

(1) On June 8, 1956, Policy No. 7621 was issued, which had an expiration date of June 8, 1959. No premiums were paid on this policy when it was issued and the premiums were $30.00. This policy covered plaintiff's dwelling and by virtue of a mortgage executed by plaintiff, plaintiff was obligated to have insurance coverage.

(2) On March 3, 1957, plaintiff paid the insurance agent, Chapman the sum of $5.00, which constituted the first premium paid by

plaintiff. Plaintiff's position is that this was payment for the partial premium for a new policy beginning on said date for a period of three years. Defendant applied the premium to Policy No. 7621, which had been issued June 8, 1956, and throughout all the transactions between the parties, as will be hereinafter shown, continued to treat the same as a premium on Policy No. 7621.

(3) In June, 1957, plaintiff received $11.-45 for a claim filed for a loss sustained on May 27, 1957. The receipt number set forth Policy No. 7621.

(4) On August 6, 1957, the insurance agency, by letter, advised plaintiff there was a balance due of $25.00 and the premium had been outstanding since June 8, 1956. It is to be noted in this letter that plaintiff's attention was called to the fact that the premiums on his insurance policy dated back to June 8, 1956, when Policy No. 7621 was issued, and not from March 6, 1957, when plaintiff contends his insurance policy became effective.

(5) On October 1, 1957, plaintiff's wife paid the sum of $25.00 and this receipt reflected there was no unpaid balance on Policy No. 7621.

(6) On June 1, 1959, plaintiff signed a sworn statement for a loss sustained in May, 1959. This statement specifically sets forth Policy No. 7621, and that the same was issued on June 8, 1956, and would expire on June 8, 1959. The check set forth Policy No. 7621.

(7) In May, 1959, Policy No. 7621, which was to expire June 8, 1959, was renewed under Policy No. 7703, which was to become effective June 8, 1959, for a period of three years with a premium of $26.46.

(8) On August 5, 1959, plaintiff was advised that "on June 8, 1959, we renewed the $2000.00 insurance on your dwelling and sent you a bill for the premium of $26.46." The letter also stated that unless the premium payment was made, the policy would be cancelled. Plaintiff failed to respond to this notice in any manner.

(9) On August 18, 1959, plaintiff was mailed a notice of cancellation of Policy 7703, to be effective August 29, 1959.

The record does not reflect any correspondence between the insurance agent and plaintiff after the notice of cancellation was mailed to plaintiff.

If plaintiff believed on March 6, 1957, the date he first paid the premium of $5.00, that he had a contract of insurance for three years from that date, the letter from the insurance agent on August 6, 1957, notified him that he was paying premiums on a policy dated June 8, 1956, and as far as the insurance agent was concerned, no new contract of insurance was negotiated. In settling the two claims, plaintiff recognized that he claimed payments for and received payments under the policy issued in June, 1956.

In August, 1959, plaintiff was advised a new policy had been issued to him, effective June 8, 1959, and there was due and owing the sum of $26.46 in premiums. Plaintiff failed to pay the premiums and on August 18, 1959, pursuant to an earlier notice, plaintiff was advised his policy of insurance had been cancelled effective August 29, 1959.

Plaintiff relies on an oral contract to insure, entered into on March 6, 1957. The first time that the insurance agent was apprised of this was subsequent to plaintiff's loss in 1960, although as early as August, 1957, plaintiff was advised that his policy was dated June 8, 1956, and his renewal policy was dated June 8, 1959, which was cancelled for failure to pay the premiums due.

In my judgment there was sufficient notice to plaintiff that the insurance agent did not apply the $5.00 premium paid by plaintiff on March 6, 1957, as a premium payment for a new policy to become effective on that date, and there was sufficient notice to plaintiff that the agent did not understand or even consider that plaintiff was negotiating for a new policy. There is no evidence in the record that plaintiff made any attempt to clarify any misunderstand-

ing that may have existed as to the terms of the policy, if any existed, but the record conclusively discloses the manner in which the insurance agent treated the $5.00 premium payment and the subsequent premium payment.

If the correspondence addressed to and received by plaintiff did not put him on actual notice that a new policy was not put in force and effect on March 6, 1957, but that the policy issued on June 8, 1956, was still effective, such correspondence was sufficient to constitute constructive notice to plaintiff and upon further inquiry he could have ascertained such fact. Under these circumstances, plaintiff was charged with notice that a new policy of insurance did not become effective on March 6, 1957. See Title 25 O.S.1961, § 13, and Chicago, R. I. & P. Ry. Co. v. Gray, 65 Okl. 181, 165 P. 157.

In my opinion, the trial court erred in not sustaining defendant's demurrer to plaintiff's evidence. I therefore respectfully dissent to the opinion promulgated by a majority of my associates.

I am authorized to state that BERRY, J., concurs in the views herein expressed.