Dear Superintendent Hoeltzel,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Should the amount of premium be a factor in determiningwhether private health insurance plans for school districtemployees are "comparable" to the state health insurance plan,pursuant to 70 O.S. 5-117.5(A) (1989)?
2. If so, what is the proper measure of the amount of premium tobe considered, given the special arrangement governing thepayment of premiums under the state plan set forth in 74 O.S.1310.1 (1989)?
¶ 1 Your questions concern the Oklahoma Legislature's recent decision to require local school districts to provide health insurance for their employees.
 I
¶ 2 Section 70 O.S. 5-117.5 of title 70 of the Oklahoma Statutes, enacted in 1988, directs all school districts in the state to provide health insurance coverage to their employees. The Legislature has, however, permitted the local districts to retain some discretion in the manner that this coverage is delivered. Section 70 O.S. 5-117.5(A) provides, in pertinent part:
 School districts may obtain health and dental insurance coverage as provided for in the State and Education Employees Group Insurance Act Section 1301 et seq. of title 74 or may obtain other health insurance coverage. Any school district that does not participate in the health and dental insurance plans offered through the State and Education Employees Group Insurance Act by July 1, 1991, shall obtain health insurance coverage for the employees which is comparable, as determined by the Office of Public Affairs, to the health insurance plan offered through the State and Education Employees Group Insurance Act.
(Emphasis added).
¶ 3 Thus 70 O.S. 5-117.5(A) permits school districts to choose between participating in the state insurance plan or obtaining "other" insurance elsewhere. The practical effect of the statute is, of course, to free local school districts to independently pursue insurance coverage — whether through private companies or through the establishment of self insuring pools.
¶ 4 This freedom to secure alternative coverage is not unrestricted, however. Section 70 O.S. 5-117.5 requires that any "other" insurance be "comparable" to that offered through the state plan. Whether insurance is comparable is to be determined by the Office of Public Affairs. 70 O.S. 5-117.5(A) (1989).[1]
¶ 5 As of this date, the Office of Public Affairs has not made any actual case determination that specific policies are "comparable," nor has it issued any official guidelines identifying the factors it will consider in making such a determination. It is clear, however, that this determination should, at a minimum, include consideration of the essential elements of the subject. To identify what these elements are, it is appropriate to look to existing law of this state. Under Oklahoma law, an insurance contract is "an agreement . . . including the following elements: (1) The subject-matter; (2) the risk insured against the coverage; (3) the amount [the benefits]; (4) the period of risk; and (5) the premium [the cost] ."Hartford Fire Insurance Co. v. Wade, 257 P.2d 1064, 1067 (Okla. 1953). Accordingly, any analysis leading to a determination that policies are "comparable" must consider each of these elements — that is, the cost, benefits, coverage, etc., associated with the private policy must all be evaluated with reference to the cost, benefits, coverage, etc., associated with the insurance offered through the state plan. Thus the answer to your first question is "yes": the amount of the premium is a necessary consideration in determining whether policies are "comparable."
 II
¶ 6 Here, the real issue is the proper measure of the premium, or cost, to be considered. This point is significant because of the special arrangement governing the payment of premiums under the state plan. The pertinent statute, 74 O.S. 1310.1 (1989), provides as follows;
 The premium for each employee of an education entity which is participating in the health and dental plans offered through the State and Education Employees Group Insurance Act shall be paid as follows: (a) one-third (Y3) of the premium shall be paid by the education entity; and (b) two-thirds (Y3) of the premium shall be paid by the education employee, provided that the education entity may pay all or any portion of education employees' portion of the premium.
(Emphasis added).
¶ 7 Under this provision, local school districts are required to pay at least one-third of the premium of each employee covered by insurance offered through the state. But 70 O.S. 1310.1 does not express a corresponding requirement that districts contribute toward the premiums of employees covered by "other" insurance. Since the language of the statute is clear, unambiguous, and unmistakable in meaning, there is no justification for interpretation. See, Anschutz Corp. v. Sanders, 734 P.2d 1290
(Okla. 1987). This office cannot, therefore, "read into" the statute a parallel requirement that local school districts must also pay one-third of their employees' premiums under private insurance plans.[2] Nevertheless, the absence of a contribution requirement for private plans does raise the question of which "cost" figure should be considered in determining whether a private insurance policy is "comparable" to the state insurance: the cost of the state insurance plan to the employee, or the cost paid by the employee plus the school district contribution?
¶ 8 The Legislature created the state insurance plan by enacting the State and Education Employees Group Insurance Act,74 O.S. 1301 et seq., as amended. The purpose of the Act is to provide uniformity in coverage; to attract and retain qualified employees by providing a competitive insurance package; to recognize and protect the state's investment in permanent employees; and to recognize long and faithful service by state employees. 74 O.S. 1302 (1989). In short, the Act is intended to benefit employees. Because the express purpose of the Act is to provide insurance coverage as a benefit to employees, this office concludes that the proper "cost" to consider is the "cost" of the state insurance to the employees. Thus, it is the premium amount the employees are required to pay for coverage under the state plan which should be measured against the premium amount the employees are required to pay under a private plan to evaluate whether the policies are "comparable."
¶ 9 A contrary conclusion is impermissible for it would enable a school district to avoid the contribution imposed upon it under the state plan at the expense of its employees. To illustrate, assume that both the premium paid by the employees and the district's one-third contribution were included in the "cost" figure. It follows that the total premium under a "comparable" private plan would exceed the cost of the state plan to the employees by one-third. As stated above 74 O.S. 1310.1
obligates a school district to pay this excess one-third if the district participates in the state system. But by the simple expedient of selecting coverage under a "comparable" private plan, the district could avoid this obligation. In effect, a district could at will shift the burden of paying the one-third premium contributions to its employees. The inevitable result would, of course, be a one-third increase in the premiums of the district employees. Allowing a school district to shift the burden imposed upon it to its employees — the group the Act seeks to benefit — would plainly contravene the legislative objective.
¶ 10 The foregoing discussion makes clear that the expense incurred by a district in making the one-third contribution mandated by 1310.1 is not a proper consideration in the analysis of whether policies are "comparable." However, this factor may as a practical matter be determinative of which policy, between policies that are otherwise comparable, will be selected by a school district. For example, if a private policy became available which bore a premium rate equivalent to that paid by employees under the state plan, and which was "comparable" in all other respects, 74 O.S. 5-117.5 would allow a district to opt for the private plan, thereby saving the premium contribution it would otherwise be obligated to make under the state plan.
¶ 11 Incidentally, this office notes that in the actual evaluation of whether the costs or any of the other components of separate policies are in fact "comparable," it is appropriate to use the ordinary and common definition of that term and to assume that the Legislature intended the term to have the same meaning as is ordinarily attributed to it. See Matter of Income TaxProtest of Ashland, 751 P.2d 1070 (Okla. 1988); LoflandBrothers Equipment v. White, 689 P.2d 311 (Okla. 1984). Webster's Ninth New Collegiate Dictionary (1985), defines "comparable" as "capable of or suitable for comparison"; "equivalent" and "similar" are cross-referenced as substitute definitions. As used in 74 O.S. 5-117.5, "comparable" does not mean "identical," nor does it require that policies be identical. Rather, the use of the word "comparable" grants a degree of flexibility. Thus "comparable" costs are costs that are equivalent or similar. Likewise, "comparable" coverage or "comparable" benefits will be those that are similar to the coverage or benefits associated with the insurance offered through the state.
¶ 12 For the cost of a private policy to be "comparable" to the cost of the state plan, its premium cost to the employee must be similar to that of the state plan. Therefore, it cannot exceed the cost of the state insurance by a significant amount. This principle will be applicable to the evaluation of each of the various other elements of a policy. To the extent that the term "comparable" connotes the weighing or rounding off of minor differences to evaluate overall equality, the separate components may be seen as counter-balancing each other. Thus a slightly higher premium rate might be offset by a superior benefits package or a lower deductible. Conversely, a lower premium might justify a small reduction in benefits or a slightly higher deductible. But these determinations are, of course, dependent upon factual issues that are properly within the province of the Office of Public Affairs.
¶ 13 It is, therefore, the official opinion of the AttorneyGeneral that:
1. In determining whether private health insurance policies forschool district employees are "comparable" to the state insuranceplan, pursuant to 70 O.S. 5-117.5(A) (1989), the amount ofthe premium is a necessary consideration. A determination by theOffice of Public Affairs that policies are "comparable" is aprerequisite to the acceptance of "other" insurance by a schooldistrict.
2. In view of the special arrangement governing the payment ofpremiums for the employees of education entities under the statehealth insurance plan, set forth in 74 O.S. 1310.1 (1989),the proper measure of the premium to be considered in determiningwhether policies are "comparable" is the amount of premium paidby the employee. For the cost of private insurance to be"comparable" to the cost of the state plan, its premium cost tothe employee must be similar to that of the premium cost to theemployee under the state plan.
ROBERT H. HENRY Attorney General of Oklahoma
K.W. JOHNSTON Assistant Attorney General
[1] Use of the past tense, "determined," indicates that the Legislature intended a positive determination that policies are "comparable" to precede the acceptance of "other" insurance. Thus, under the statute, a determination by the Office of Public Affairs that policies are comparable, or alternatively, compliance with guildelines that may be promulgated by that body is a prerequisite to the acceptance of any "other" coverage.
[2] Notwithstanding our conclusion that under § 1310.1 there is no requirement that the school districts must pay a portion of its employees' premiums under private plans, this office notes that under 70 O.S.Supp. 1989, § 5-117[70-5-117](A)(14) the board of each district may make such a payment as part of a negotiated compensation package. In this regard, both the districts and the employees are reminded of the duty to negotiate in good faith imposed by 70 O.S.Supp. 1989, § 509.8[70-509.8].